ABORN et al. v. JANIS et al.

(Supreme Court, Special Term, New York County.   April 19, 1907.)

1. GUARDIAN AND WARD (§ 48*)—CONTRACTS OF GUARDIAN—VALIDITY.

A general guardian, as such, is not entitled to the services or the society of the ward, and cannot by virtue of his office bind the ward's person or property, unless expressly authorized by statute.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 219; Dec. Dig. § 48.*]

2. INFANTS (§ 58*)—CONTRACTS—AVOIDANCE.

In general, contracts of infants, including contracts for personal services, may be avoided by them, either before or after their arrival of age.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 151; Dec. Dig. § 58.*]

3. INFANTS (§ 49*)—CONTRACTS—PERFORMANCE—INJUNCTION.

The court will not enforce the contract of an infant for personal services by injunction, compelling performance of the negative covenant binding the infant not to render services for others during the period of the employment.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 112; Dec. Dig. § 49.*]

4. INFANTS (§ 58*)—CONTRACTS—PERFORMANCE—INJUNCTION.

The court will not prevent the disaffirmance of a contract by a minor before the attainment of his majority, unless the contract is of a beneficial character to him.

[Ed. Note.—For other cases, see Infants, Dec. Dig. § 58.*]

5. INFANTS (§ 58*)—CONTRACTS—PERFORMANCE—INJUNCTION.

A contract binding an infant to render services as an actress for theatrical seasons, giving the adverse party the right to terminate the contract at the end of each season, and stipulating that the services of the infant may be omitted at the adverse party's election without pay for any cause, is not for the interest of the infant, and the court will not prevent her from avoiding it during her infancy, especially on it appearing that the adverse party disposed of the infant's services to another at a profit.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 149; Dec. Dig. § 58.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. INFANTS (§ 49*)—CONTRACTS—STATUTES.

Domestic Relations Law (Laws 1896, p. 230, c. 272) art. 7, relating to apprentices, does not apply to a contract binding an infant to render services as an actress for designated theatrical seasons.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 112; Dec. Dig. § 49.*]

Action by one Aborn and others against Elsie Janis and others. On motion for a preliminary injunction. Denied.

Order affirmed 121 App. Div. 923, 106 N. Y. Supp. 1115.

Fromme Bros., for plaintiffs.

Nathan Burkan, for defendants.

BISCHOFF, J. On the 18th day of April, 1906, an agreement was made between the defendant Elsie Janis, by her general guardian, and the plaintiffs Aborn, whereby the defendant Janis was to render services as an actress to the plaintiffs for the theatrical seasons of 1905–1906 and 1906–1907, with the privilege to the plaintiffs Aborn to renew the agreement and to demand the further services of the defendant Janis for the seasons of 1907–1908 and 1908–1909, upon giving notice on or before the 1st days of June of the years 1907 and 1908, respectively. On the same day a further agreement was entered into between the parties to the agreement above referred to, together with the plaintiffs Liebler and Tyler, which agreement in practical effect transferred to Liebler and Tyler the benefits accruing to the plaintiffs Aborn under that contract, and it appears that the plaintiffs Aborn became entitled to certain payments from Liebler and Tyler weekly by reason of the assignment of their interest and of their right to demand the performance of services by the defendant Janis under her contract with them. Asserting that the defendant Janis has threatened to violate the terms of these contracts and her refusal to perform in accordance therewith, the plaintiffs have brought this action for an injunction to enforce a negative covenant contained in the agreement whereby this defendant had agreed to perform services as an actress for no other person during the period referred to in the contract; and a preliminary injunction is sought upon the present motion particularly to restrain the performance of an alleged agreement made between the defendant Janis and the defendant Percy G. Williams, with whom the defendant Janis has agreed to render services at a weekly salary very substantially in advance of the rate of compensation provided in the agreements made by her with the plaintiffs.

It appears that at the time the contracts in suit were made the defendant Elsie Janis was of the age of 17 years, and that she is now 18 years of age. The agreements were made by her personally, and also by the defendant Janis E. Bierbower, as her general guardian, and the question before me relates to the power of the court to enforce, by decree of specific performance, an agreement made by an infant, and, incidentally, to the right of the infant to disaffirm during infancy a contract made by her for the rendition of services in return for substantial compensation. The contracts in suit, which were distinctly for the rendering of personal services by the infant, were given no added or special virtue by reason of the fact that they were made in

behalf of the infant by her general guardian. A general guardian, as such, is not entitled to the services or society of the ward, and cannot, by virtue of his office, bind the ward's person or property, unless expressly authorized by statute—an authorization which is not made by statute in this state. Ide v. Brown, 178 N. Y. 31, 70 N. E. 101. It is well settled that, in general, contracts of infants may be avoided by them either before or after they arrive at their majority (Witmarsh v. Hall, 3 Denio, 375); and this is so of an infant's contract for services (Vent v. Osgood, 19 Pick. [Mass.] 572). But it is said that a court of equity will enforce the contract of an infant when beneficial in character (In re Livingston, 34 N. Y. 555); and it is claimed that upon some principle of estoppel the court should enforce the contract for services in this case, in that, when made, the agreement reserved a substantial benefit to the infant, and that the repudiation of the infant's obligation at the present time would result in hardship to the plaintiffs, who, upon the faith of the contract, have expended substantial sums for their theatrical production in which the infant had been featured to portray the leading character.

Assuming for the moment that the court could enforce the contract, and that the usual remedy by injunction, which would obtain in the case of a threatened breach of the agreement by an individual to render unique and distinct services with a negative covenant as to the rendition of services with others or elsewhere, might as a matter of equitable jurisdiction be resorted to, notwithstanding that the person who had agreed to perform the services is an infant, the question arises whether the remedy by injunction would be a remedy which a court of equity should properly afford. An adult, who has bound himself to render peculiar and valuable services to another, and has agreed to render them for no one else during the term of the contract, will, it is to be assumed, continue to observe his contract, if restrained from rendering his services to another person; that is, the injunction in its cogent effect upon adult intelligence would result in performance of the contract, and it is for this reason that the courts have adopted the remedy by injunction in cases of contract for personal services as a means to the desired end—specific performance of the agreement made by the party thus enjoined. But if, prior to the attainment of the age of 21 years, a person may not ordinarily make a contract because of that absence of mature intelligence which the law presumes to arise from nonage, how may it be said that the infant's intelligence will be affected by an injunction, as though the wisdom of an adult were present? To determine that such a contract should be specifically enforced by resort to an injunction prohibiting the breach of the negative covenant would be to say, in effect, that the infant, a person lacking sufficient judgment to contract, must yet exercise sufficient judgment as to his or her personal interest to elect between performing a contract not necessarily wisely made, and, indeed, presumably unwisely made, or take the harsh alternative of starvation for a refusal to perform at all or for an omission to perform in a satisfactory manner; and all this while the infant, because of immaturity, is deemed to be under the protection of the court as its ward.

In my view, it would be impossible, or, if not impossible, certainly

not appropriate, for the court to attempt to enforce an infant's contract for personal services by an injunction, as in this case, and I am referred to no authority for the exercise of any such power. Cases are quite conceivable where, in relation to the property rights of an infant, contracts have been made by the infant or by a general guardian which the court in its wisdom will not permit to be disaffirmed before the attainment of majority. No such situation is presented here.

Again, assuming that the court may not permit disaffirmance of an infant's contract in a proper case, it is undoubtedly the rule that the contract must have been of a beneficial character; and such, as I view the case, this contract was not. In effect the plaintiffs, the employers, had it entirely within their own control to terminate the contract at the end of each season, but at their election the plaintiffs were bound for the full period. Almost every conceivable matter which might arise to interfere with the theatrical performances which were contemplated was provided for as reason for the refusal of the employers to accept and pay for the infant's services, and, indeed, a general provision was made that the services were to be omitted at the employers' election without pay, practically for any cause. Again, the very conditions under which these contracts were made imported a failure of adequate benefit to the infant. The plaintiffs Aborn obtained the agreement for the infant's services upon many valuable conditions at a certain rate of compensation, and at the very moment when the contract was made they disposed of the infant's services to the plaintiffs Liebler and Tyler for a certain compensation to them, which represented no services upon their part to their assignees, other than their present ability to have procured the infant's acceptance of the contract which was thus entered into.

I do not pass upon the question of fact raised with regard to the manner of performance of this contract and its consequent effect upon the infant's health, and I conclude, for the reasons stated, that the motion for an injunction pendente lite should be denied. The case of Mutual Milk Co. v. Prigge, 112 App. Div. 652, 98 N. Y. Supp. 458, in which it was held that an infant who has agreed not to solicit the trade of his employer's customers after the termination of the employment will be enjoined from violating his covenant, has no bearing upon the question before me. In that case the contract was executed and the injunction operated to prevent the infant from using knowledge which he had obtained in confidence—not to prevent his earning a livelihood or to compel him to perform an executory contract to work for the plaintiff.

Nor does the statute relating to apprentices (Domestic Relations Law [Laws 1896, p. 230, c. 272] art. 7) touch the questions at issue; the purpose of the statute being to regulate relations arising from a totally different kind of employment, under circumstances which are foreign to such a case as this, as the words of the statute directly import.

Motion denied, with $10 costs. Settle order on notice.