In the Matter of the Arbitration between FREDDIE PRINZE, Also Known as FREDDIE PRUETZEL, Appellant, and DAVID JONAS, Respondent.

First Department, June 17, 1975

*Eli D. Schoenfield* of counsel *(Joseph J. Santora, Robert B. McKay* and *Jay G. Safer* with him on the brief; *Hardee Barovick Konecky & Braun,* attorneys), for appellant.

*Franklin R. Weissberg* of counsel *(J. I. Drew* with him on the brief; *Colton, Weissberg, Hartnick & Yamin,* attorneys), for respondent.

KUPFERMAN, J. In 1974, when David Jonas (Jonas) entered into an agreement to be the personal manager (cf. General Business Law, § 171, subd 7) of Frederick Pruetzel also known as Freddie Prinze (Prinze), a performer in the entertainment field, Prinze was over the age of 18 but under 21. This brought into play section 3-101 of the General Obligations Law (derived from the Debtor and Creditor Law):

"§ 3-101. Infants' contracts; when they may not be disaffirmed.

"1. A contract made by an infant after he has attained the age of eighteen years may not be disaffirmed by him on the ground of infancy, where the contract was made in connection with a business in which the infant was engaged and was reasonable and provident when made.

"2. In any action or proceeding in which the right to disaffirm on the ground of infancy a contract made by an infant after he has attained the age of eighteen years is in issue, the burden of proof on the question whether the contract was made in connection with a business in which the infant was engaged, and also on the question whether the contract was reasonable and provident when made, shall be upon the person seeking to deny or defeat such disaffirmance or to enforce the contract."

There is *another statute* covering performers who are *minors of any age* in which provision has been made for judicial approval in order to avoid later disaffirmance. (General Obli-

gations Law, § 3-105, formerly Domestic Relations Law, § 74.) However, no such contract may be approved if its term "including any extensions thereof by option or otherwise, extends for a period of more than three years from the date of approval" (§ 3-105, subd 2, par d). This statute is based on the California experience since 1927 with employment of infants for entertainment purposes, where, to avoid future conflict, the agreements are approved in advance. (1961 Report of NY Law Rev Comm, p 255; NY Legis Doc, 1961, No. 65 [I].)

The agreement in question was submitted to the Surrogate who did not approve it. It may very well be that the failure to approve was due to the fact that, while the term of the agreement was for three years, it provided for an option for an additional four years if the earnings of Prinze exceeded $50,000 (the figure in the amended version of the agreement).

The purpose of the provision limiting the right of the court to approve in advance an agreement of a minor that exceeds the term of three years, was to limit this anticipatory approval to a contractual period "in which the infant's development and his future needs and capabilities are reasonably foreseeable." (1961 Report of NY Law Rev Comm, p 257; see, also, *Bright Tunes Prods. v Lee,* 43 Misc 2d 21, 23.)

The agreement between the parties contained the arbitration provision set forth in the dissenting opinion.

The matter therefore resolves itself into two issues: one, whether, as the dissent would have it, any agreement by an infant (over the age of 18 but under 21) for a term longer than three years, is automatically proscribed for all purposes; and two, whether arbitration has any place when there is a question as to the validity of such a contract.

Obviously, the court may not approve in advance, under the legislative mandate, any agreement with a minor for a term longer than three years from the "date of approval". However, that does not of itself mean that the agreement is invalid where the minor is over the age of 18 at the time of execution, especially when tested as of the time of disaffirmance, which in this case took place in 1974, in the very year of the making of the contract. Subdivision 2 of section 3-101 of the General Obligations Law provides that the burden as to the reasonableness of a contract will be upon the person seeking to enforce it, in this case Jonas, the personal manager. One facet to be considered on the question of reasonableness will be the length of the contract (cf. *De Haviland v Warner Bros.,* 67 Cal

App 2d 225; *Ketcham v Hall Syndicate,* 37 Misc 2d 693, 696), although also to be taken into account is the fact that the option to extend the three-year term requires earning of $50,000 in the last year of the term before it can be extended. Subdivision 2 of section 3-101 stands on its own footing and is not foreclosed by the three-year provision of subdivision d of section 3-105.

In determining the reasonableness of the agreement it is in order to scrutinize the entire transaction. (See *Mandel v Liebman,* 303 NY 88, 93.) The arbitration clause is perfectly proper and is to be enforced. *(Matter of Weinrott [Carp],* 32 NY2d 190.)

Accordingly, the judgment of the court at Special Term (Sarafite, J.) which denied the petition for a stay of arbitration pursuant to CPLR 7503 (subd [b]) should be affirmed without costs.

Lane, J. (dissenting). On January 16, 1974, Freddie Prinze (Prinze) entered into a contract with David Jonas (Jonas). Jonas was to be Prinze's personal manager and was to further Prinze's theatrical career. The agreement was to be of three years' duration with an option to extend the agreement for an additional four years if Prinze grossed $35,000 during the third year of the agreement. The agreement was modified on February 19, 1974 to provide for the exercise of the option only if the gross income in the third year was in excess of $50,000. Both the agreement and its modification contained an arbitration clause which provided: "In the event of any dispute under or relating to the terms of this agreement, or the breach, validity or legality thereof, it is agreed that the same shall be submitted to arbitration to the American Arbitration Association".

Prinze disaffirmed the agreement by a letter dated October 22, 1974 on the grounds of infancy.

Jonas served Prinze with a demand for arbitration pursuant to the arbitration clause in the contract and sought relief in the form of a declaration of the validity of the contract. Prinze applied for a stay of arbitration which was denied by Special Term. We would reverse.

In the case at bar, the fact of infancy is conceded. Section 3-105 of the General Obligations Law provides a vehicle for court approval of an infant's contract which would preclude

disaffirmance on the grounds of infancy. Paragraph d of subdivision 2 thereof specifically provides:

"No contract shall be approved if the term during which the infant is to perform or render services or during which a person is employed to render services to the infant, including any extensions thereof by option or otherwise, extends for a period of more than three years from the date of approval of the contract."

Section 3-105 of the General Obligations Law implements a public policy intended to protect infants from exploitation. The three-year contractual limitation is deemed to be a time period during which the infant's future needs and capabilities are reasonably foreseeable (1964 Report of NY Law Rev Comm, pp 23-24; 1965 Report of NY Law Rev Comm, p 501). To bind an infant to a contractual period of longer than three years is deemed inimical to the best interests of the infant.

The contract in the case at bar concededly contained an option to extend the contract term beyond three years. It therefore must be deemed unreasonable as a matter of law *(Nigro v Celestial Music Corp.,* NYLJ, March 17, 1969, p 2, col 3, affd 33 AD2d 1003).

Respondent Jonas, however, urges that the arbitration clause in the contract is separable and therefore the issue of the validity of the contract is for the arbitrators to determine.

A court may stay arbitration when "a valid agreement was not made or has not been complied with" (CPLR 7503, subd [b]; cf. *Matter of Housekeeper v Lourie,* 39 AD2d 280, app dsmd 32 NY2d 832). While our Court of Appeals has recently construed the phrase "valid agreement" to mean a valid agreement to arbitrate and that such an arbitration clause (read "agreement") is separable *(Matter of Weinrott [Carp],* 32 NY2d 190, 198), the court nonetheless further stated that a contract containing a broad arbitration clause may be held wholly invalid, inclusive of the agreement to arbitrate,* and the determination of the validity of the contract would be a matter for court determination.

The right of an infant to disaffirm contracts which are improvident is, as mentioned previously, a right permeated with a public interest. Our courts, as the guardians of that

---

* For example, if the fraud even permeates the arbitration clause *(Matter of Weinrott [Carp],* 32 NY2d 190, 197); if a form contract is used, *id.,* at p 199; if the arbitration provision "seems to be less than broad," *id.,* at p 199.

public interest, cannot relegate to arbitration between private parties matters which will have a strong impact on the public at large (cf. *Matter of Aimcee Wholesale Corp. [Tomar Prods.]*, 21 NY2d 621).

Accordingly, the judgment, entered February 20, 1975, denying a stay of arbitration, should be reversed and a permanent stay of arbitration should be granted.

MURPHY and NUNEZ, JJ., concur with KUPFERMAN, J.; STEVENS, P. J., and LANE, J, dissent in an opinion by LANE, J.

Judgment, Supreme Court, New York County, entered on February 20, 1975, affirmed, without costs and without disbursements.