38 N.Y.2d 570 (1976)
In the Matter of the Arbitration between Freddie Prinze, Also Known as Freddie Pruetzel, Appellant, and David Jonas, Respondent.
Court of Appeals of the State of New York.
Argued November 24, 1975.
Decided February 12, 1976.
Joseph J. Santora and Stephen Ross for appellant.
Franklin R. Weissberg and Jerry I. Drew for respondent.
Judges JONES and COOKE concur with Judges GABRIELLI and WACHTLER; Judge FUCHSBERG dissents and votes to reverse in a separate opinion in which Chief Judge BREITEL and Judge JASEN concur.
*571 GABRIELLI and WACHTLER, JJ.
The petitioner is a well-known entertainer in the television industry. The respondent *572 is a "personal manager" in the entertainment profession. On January 16, 1974 they signed a contract whereby the petitioner agreed to employ the respondent as his agent for a period of three years. In exchange for his expert management services, respondent would receive compensation at the rate of 15% of petitioner's gross income. The contract is a standard form used and approved by the conference of personal managers in the entertainment industry. It contains an arbitration clause which provides that "In the event of any dispute under or relating to the terms of this agreement, or the breach, validity or legality thereof, it is agreed that the same shall be submitted to arbitration". In addition to the standard features the contract contains a rider giving the respondent the option to extend the agreement for four more years provided that petitioner's income exceeds $35,000. This figure was later raised to $50,000 by a superseding agreement signed on February 19, 1974.
When the petitioner signed these agreements he was 19 years old and thus, according to the law in effect at that time, he was legally an infant (General Obligations Law, § 1-202; L 1974, ch 898, § 1).
In April, 1974 the final agreement between the parties was submitted to the Surrogate for approval under section 3-105 of the General Obligations Law but the application was not processed by the court nor further pursued by the parties.
In October, 1974 petitioner advised respondent in writing that he disaffirmed the agreement "dated February 19, 1974 and any antecedent agreements * * * on the ground that all such arrangements were entered into during my infancy." In November, 1974 respondent served a demand for arbitration indicating "Nature of Dispute: Freddie Prinze's alleged disaffirmance of contract."
Petitioner then applied to stay arbitration on the ground that there was no valid agreement to arbitrate (CPLR 7503). Specifically he urged that his disaffirmance invalidated the agreement in its entirety including the arbitration clause. Respondent argued that the petitioner did not have an absolute right to disaffirm since section 3-101 of the General Obligations Law then provided that "A contract made by an infant after he has attained the age of eighteen years may not be disaffirmed by him on the ground of infancy, where the contract was made in connection with a business in which the infant was engaged and was reasonable and provident when *573 made." Thus, he contends, validity of the disaffirmance depended upon the reasonableness of the agreement. Since this would determine the continuing validity of the agreement, the question of reasonableness should be decided by the arbitrators.
The petitioner argued that section 3-105 of the General Obligations Law rendered the agreement unreasonable as a matter of law and thus subject to an absolute right of disaffirmance. The relevant portions of that section provide:
"1. A contract made by an infant or made by a parent or guardian of an infant, or a contract proposed to be so made, under which (a) the infant is to perform or render services as an actor, actress, dancer, musician, vocalist or other performing artist, or as a participant or player in professional sports, or (b) a person is employed to render services to the infant in connection with such services of the infant or in connection with contracts therefor, may be approved by the supreme court or the surrogate's court as provided in this section * * * If the contract is so approved the infant may not, either during his minority or upon reaching his majority, disaffirm the contract on the ground of infancy or assert that the parent or guardian lacked authority to make the contract. * * *
"2. * * * d. No contract shall be approved if its term, including any extensions thereof by option or otherwise, extends for a period of more than three years from the date of approval of the contract". (Emphasis added.)
As indicated earlier, here the initial term of the contract is for three years, with an option to renew for an additional four years. Thus the petitioner could be bound for a total of seven years.
Special Term denied the application for a stay and directed the parties to proceed to arbitration "on the authority of Matter of Weinrott v Carp, 32 N.Y.2d 190, 198". The Appellate Division affirmed with two Justices dissenting (48 AD2d 315).
Initially we note that the age of majority in this State has been lowered from 21 to 18 as of September 1, 1974 (General Obligations Law, § 1-202; L 1974, ch 898). Thus if the contract involved in this litigation had been made several months later than it was, the petitioner would have no right to disaffirm at all. The change in the law however has no effect on the power to disaffirm contracts made prior to its effective date (ibid.). *574 Both sides agree that the petitioner had some power to disaffirm and the validity of the disaffirmance depends on the reasonableness of the agreement. They disagree, however, as to whether the question of reasonableness should be decided by the courts or the arbitrators.
As we frame them, three issues are presented for our consideration: (1) is an arbitration clause in an entertainment contract entered into by an individual over 18 years of age, containing an option for renewal for four years, unreasonable and improvident as a matter of law and, therefore invalid at its inception pursuant to section 3-105 of the General Obligations Law; (2) if the clause cannot be said to be unreasonable as a matter of law, does public policy nevertheless mandate that the question of reasonableness be resolved by the judicial process; (3) Finally, is the clause otherwise enforceable under CPLR 7503.
Prefatorily, it should be emphasized that in the absence of a compelling public policy, arbitration is a preferred means for the settlement of disputes (Matter of Weinrott [Carp], 32 N.Y.2d 190; Matter of National Equip. Rental [American Pecco Corp.], 28 N.Y.2d 639; Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 N.Y.2d 621). When arbitration is invoked the only questions to be resolved by the courts (unless the dispute is barred by the Statute of Limitations) are whether "a valid agreement was made" and whether such agreement was "complied with" (CPLR 7503). Furthermore, the CPLR admonishes that "the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute" (CPLR 7501). (See Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Amer., 37 N.Y.2d 91.) We find no merit to the first argument made by petitioner that the arbitration clause is invalid, as a matter of law, because the employment agreement does not satisfy the requirements of section 3-105 (subd 2, par d) of the General Obligations Law. It is recognized, of course, that the option provision precluded Surrogate's Court approval under the three-year limitation imposed by section 3-105 (subd 2, par d) of the General Obligations Law. But it does not follow that this renders the agreement, including the arbitration clause, unreasonable as a matter of law. The statute of course simply provides that "No contract shall be approved if its term, including any extensions thereof by option or otherwise, extends for a period of more than three years from the date of *575 approval of the contract". (Emphasis added.) It does not state that such a contract shall be deemed unreasonable for the purposes of section 3-101 of the General Obligations Law. And there is nothing to indicate that the Legislature intended the statute to have this effect. On the contrary the obvious purpose and effect of section 3-105 was not to enlarge the right to disaffirm, but rather to completely eliminate the power to disaffirm under certain circumstances.
The Law Revision Commission report recommending the passage of section 3-105 indicates that a major reason for its enactment was to provide a degree of certainty for parties contracting with infants in the entertainment industry so that the validity of such contracts would not be rendered doubtful or subject to subsequent litigation concerning reasonableness, after a considerable expenditure of effort in part or full performance of the contract. After noting that "[t]he right of disaffirmance may also operate * * * to discourage others from contracting with him [the infant] and thus bar him from contracts that are to his advantage", the report continued further to discuss the inadequacy of section 3-101 and the necessity for further legislation by stating: "This section [General Obligations Law, § 3-101, formerly Debtor and Creditor Law, § 260], however, provides no protection where the infant is under the age of 18 years, and in cases of infants over the age of 18 years it provides no procedure by which prospective employers of the infant, or persons contracting to render services to him, can obtain assurance of a binding contract before expenditures are made in reliance on the contract." (1961 Report of NY Law Rev Comm, p 253.)
Section 3-105 was enacted to fill this need. But the statute also provides an additional measure of protection for infants in exchange for the loss of the right to disaffirm. The infant cannot be bound for more than three years. In discussing the purpose and function of the three-year limitation on the duration of contracts, upon which petitioner predicates the invalidity of the agreement here, the report states that the restriction "limits the period for which the contract is made binding to a period in which the infant's development and his future needs and capabilities are reasonably foreseeable" (1961 Report of NY Law Rev Comm, pp 256-257).
The statutory scheme is clear. If the conditions set forth in section 3-105 are satisfied, and the contract is approved, the right to disaffirm is extinguished. But the adult party must *576 pay a price in order to obtain this guarantee against disaffirmance. The duration of the contract must be limited to three years. If it is to run for a longer period it cannot be approved and the right to disaffirm is left intact. That is the risk the adult party runs by insisting on a longer period. Thus the fact that the contract could not be, or was not approved under section 3-105 does not render it unreasonable as a matter of law. The duration, together with the other provisions, is relevant in determining the reasonableness of the contract. It is not necessarily conclusive. In other words, although section 3-105 was available to the parties here, the failure or inability to obtain approval from the Surrogate's Court pursuant to section 3-105 of the General Obligations Law, did not render the contract null and void when made; rather, the determination of its validity was merely postponed until attempted disaffirmance at which time the provisions of section 3-101 of the General Obligations Law came into play.
Petitioner urges that this State's public policy compels the submission of the total issue of disaffirmance to the courts. We do not agree. In lowering the age of majority to 18 years of age (General Obligations Law, § 1-202) the Legislature has indicated with significant clarity that protection of individuals over 18 years of age was not a "major State" policy (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 N.Y.2d 621, 629, supra). Section 3-101 of the General Obligations Law continues a measure of protection previously afforded those individuals between 18 and 21 years of age who entered into contracts in connection with a business in which they were engaged prior to the effective date of section 1-202 of the General Obligations Law. Since petitioner was 19 years of age when he signed the contract, the public policy protecting minors is really not, and cannot be, the issue here. Rather, the only issue is the reasonableness and providence of the contract pursuant to section 3-101 of the General Obligations Law (cf. Hirsch v Hirsch, 37 N.Y.2d 312; Matter of Weinrott [Carp], 32 N.Y.2d 190, supra; Matter of National Equip. Rental [American Pecco Corp.], 28 N.Y.2d 639, supra). Time, "that subtle thief of youth", and the Legislature have deprived petitioner of the benefits of the claimed public policy of this State.
In short we see no reason to depart from the general rule announced in Weinrott that the court's sole function is to determine the validity of the arbitration clause (CPLR 7503; Matter of Weinrott [Carp], 32 N.Y.2d 190, supra; Matter of Nationwide Gen. Ins. Corp. v Investors Ins. Co. of Amer., 37 N.Y.2d 91, supra).
*577 The final question, then, is whether the courts below were correct in holding that the arbitration clause was valid. The "valid agreement" referred to in CPLR 7503 concerns a valid agreement to arbitrate (Matter of Weinrott [Carp], 32 N.Y.2d 190, 198, supra). Thus even when it is alleged, as it is in this case, that the contract itself is invalid in its entirety, the court's role is still confined to determining the validity of the arbitration clause alone. If the arbitration agreement is valid, any controversy as to the validity of the contract as a whole passes to the arbitrators. In this case the courts below were correct in holding the arbitration clause valid. If the clause were unreasonable in nature, or had the mark of one wrongfully imposed upon an infant, its validity would be subject to question. However, again considering the age of petitioner, as well as the fact that this clause is standard, reasonable, and in common use between performers and their agents, the courts below properly concluded that it was valid and enforceable. Indeed, petitioner does not claim that the arbitration provision itself is unreasonable and there are no allegations that the arbitration agreement was procured by fraud, misrepresentation or overreaching.
Accordingly, the order of the Appellate Division should be affirmed.
FUCHSBERG, J. (dissenting).
The question before us is not whether this contract, or even its arbitration clause, is valid, but rather, whether appellant, who was legally an infant when he signed it, had the capacity to make such a contract. In our view, the majority has overlooked this distinction entirely.
In its proper context, arbitration is supported by strong statutory and decisional policy (Matter of Weinrott [Carp], 32 N.Y.2d 190; Matter of National Equip. Rental [American Pecco Corp.], 28 N.Y.2d 639; Hirsch v Hirsch, 37 N.Y.2d 312; Board of Educ., Union Free School Dist No. 3, Town of Huntington v Associated Teachers of Huntington, 30 N.Y.2d 122). However, overriding or competing legislative public policy can be and has been found to interdict arbitration where its purposes and methods, however laudable, conflict with other concerns for which administrative or judicial procedures are more appropriate (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 N.Y.2d 621; *578 cf. Matter of West Irondequoit Teachers Assn. v Helsby, 35 N.Y.2d 46; Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.], 37 N.Y.2d 614, 616-617; and see Chernick v Hartford Acc. & Ind. Co., 8 AD2d 264, affd 8 N.Y.2d 756; Benfante v Commercial Ins. Co., 5 Misc 2d 772; Matter of Coughlin [MVAIC], 45 Misc 2d 672; Agreement to arbitrate future controversies as binding on infant, Ann., 78 ALR2d 1292).
Let us examine that policy as it applies to the protection of the contracting infant here. Though the affirmers suggest that, because he would be considered an adult under present law (General Obligations Law, § 1-202), the legislative public policy which might otherwise contravene arbitration of his capacity to sign this contract has become irrelevant, that is not the legislative design. Section 3-101 of the General Obligations Law (formerly Debtor and Creditor Law, § 260; L 1941, ch 327) has always observed a distinction between minors under the age of 18 and those over that age but under 21 years. When the Legislature lowered the age of majority to 18 years, it expressly retained all of the provisions of section 3-101 of the General Obligations Law applicable to these older minors, provided they signed their contracts before September of 1974, the case here. Accordingly, the conditional right of disaffirmance which appellant possessed when he signed his contract has not been abrogated (and see General Obligations Law, § 1-202, statement of legislative intent; L 1974, ch 898, § 5) and appellant is to be treated, under the statute, as a minor with the right to call his capacity to sign the contract into question.
Moreover, section 3-105 of the General Obligations Law also still applies to the appellant to the full extent that it did when he signed the contract. And, as the majority opinion itself notes, the legislative history of section 3-105 indicates an intent to observe a dichotomy between younger and older minors. Failure to obtain Surrogate's Court approval under the pattern of that statute renders the adult who contracts with a younger minor without the special statutory protection. Such failure in the case of a contract with an older minor simply puts the adult back where he stood under section 3-101, subject to the burden of proof that the contract was "reasonable and provident when made". (See Bright Tunes Prods. v Lee, 43 Misc 2d 21; Nigro v Celestial Music Corp., NYLJ, March 17, 1969, p 2, col 3 [HOFSTADTER, J.], affd 33 AD2d 1003; *579 Le Bow v Rolin, NYLJ, Feb. 21, 1968, p 17, col 7 [SPIEGEL, J.], affd 30 AD2d 918.) It follows that, while section 3-105 is thus not dispositive of appellant's rights, since court approval was not obtained, the policy expressed in it is most relevant to a determination of reasonableness and providence under section 3-101 when the contract in issue, as here, is of the entertainment kind toward which section 3-105 is specifically directed.
Indeed the report of the Law Revision Commission (NY Legis Doc, 1961, No. 65 [I]), whose findings shaped the statute, emphasized that contracts made by minors in the entertainment and sports industries are unique, especially since the potential for exploitation of the person of a minor, as distinguished from simply his material assets, tends to be vastly greater in those callings than in more conventional occupations. Both the report itself and the study done at the direction of the commission (Touster, Contracts Relating to the Services of Talented Minors and the Treatment of Their Earnings Therefrom, 1961 Report of NY Law Rev Comm, p 269) further indicate that the Legislature was concerned not only about the effects of such contracts on young children but on older ones as well. Interestingly, the report, noting that a parent who signed or guaranteed such a contract for his child could be held in damages even where the law would not honor the contract as against the minor (Lustig v Schoonover, 51 NYS2d 156, affd 269 App Div 830; Gervis v Knapp, 182 Misc 311), indicates apprehension that even this might have the effect of inducing parents to overlook the best interest of a young child or of inducing an older minor to perform an improvident contract out of a sense of filial loyalty (1961 Report of NY Law Rev Comm, p 259; see, also, Lee v Silver, 262 App Div 149, affd 287 N.Y. 575; cf. Aborn v Janis, 62 Misc 95, affd 122 App Div 893).
Furthermore, the nature of the inquiry which the Surrogate's Court is directed to make before it approves a contract under section 3-105 of the General Obligations Law is illuminating. A guardian of the infant's property must be appointed and a portion of his income must be set aside against his majority. Manifesting that the court's concern for the infant's welfare is to be continual, the statute permits the court to revoke its approval if, at any time while a contract is in force, it appears that its provisions are no longer in the best interests of the minor. The court's concern is also as to "whether *580 the terms of the contract are reasonable in the light of the then financial and educational interests of the minor as well as the proper development of his talents and his chances for success in the profession." (Warner Bros. Pictures v Brodel, 31 Cal 2d 766, 775.)[1]
The courts must consider these same factors in determining, under section 3-101 as well, whether the contract was reasonable and provident when made. The absence of Surrogate's Court approval does not in any way permit an adult to impose upon a minor of any age a contract which does not meet these requirements. As the majority's citation to the legislative history indicates, when an adult who contracts with a minor fails to obtain section 3-105 advance approval, he is deemed to have undertaken the risk that, upon a disaffirmance tested under section 3-101, his contract will be held, in the court's judgment, not to be in the best interests of the minor.
It is starkly clear, therefore, that the Legislature's decision to preserve the rights and protections previously afforded to older minors by the statutes and their legislative history constitutes a strong statement of legislative policy. We have no power to ignore that policy even when we may think it unwise or unnecessary (Montgomery v Daniels, 38 N.Y.2d 41, 53; People v Broadie, 37 N.Y.2d 100, 117-118). That means that we are required to treat appellant as the infant he legally was when he signed the contract.
Certainly, the continuing supervision of the Surrogate's Court prescribed for younger and older minors alike, even when approval has been given, could not very well be carried out by an arbitrator. There is no assurance that an arbitrator, who draws his powers from the four corners of the contract itself and is not obliged to apply the law, will make an adequate determination, under proper guidance, of the extent to which the contract as a whole was "reasonable and provident when made" (General Obligations Law, § 3-101), especially since that determination requires consideration not just of the infant's age, but of his educational and developmental situation, the propensity for abuse of talent by the purveyor of the contract, and all of the other factors with which courts would have to concern themselves (see Mara v Nevins, 122 NYS2d 225; Sazani v McNally, 8 Misc 2d 526; cf. Eastern Airlines v Stuhl, 65 Misc 2d 901, affd 68 Misc 2d 629; *581 Bach v Long Is. Jewish Hosp., 49 Misc 2d 207; De Jaeger v Chilson, 185 Misc 156; Rappaport v Guidone, 63 NYS2d 239).
As our court has held in another setting, the very strengths of arbitration become its weakness when, as here, a contravening, strong legislative public policy is involved. The decisions of arbitrators are not reviewable for errors of law (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 N.Y.2d 621, supra; see, also, Lentine v Fundaro, 29 N.Y.2d 382). That limitation may favor practical and expedient decision making, but, advantageous as this may be in other types of cases, it is antithetical to the intended protection of infants.
Jurisprudential and statutory concern for safeguarding infants is not of recent vintage. Substantive and procedural rules of considerable refinement have been developed for the protection of our young over literally centuries of effort and may not be set aside lightly (see 3 Holdsworth, History of English Law, p 517, and cases cited therein; Zouch v Parsons, 3 Burr 1794; Year Book, 7 Edward IV, p 6; Huffcut, Agency [2d ed], § 15: Keane v Boycott, 2 H Bl 511; Harvey v Ashley, 3 Atkyns 607; Casey v Kastel, 237 N.Y. 305; Infancy as a Defense to a Contract, 1938 Report of NY Law Rev Comm, p 99; NY Legis Doc, 1938, No. 65 [I]).
Nor should Matter of Weinrott [Carp] (32 N.Y.2d 190, supra), a case not involving infants, serve as support for the affirmers' position. In Weinrott, we simply held that fraud in the inducement is an issue for an arbitrator whenever there is no demonstration that an arbitration clause itself was procured by such fraud (id., p 197), since it must be deemed to be the intent of the parties to submit the validity of the contract to arbitration (id., p 198). But a contract entered into by an infant may be improvident and unreasonable no matter how clearly he intended it. Indisputably, the Legislature, in passing both sections 3-101 and 3-105 of the General Obligations Law, was concerned with the protection of minors even from their own immature and ill-advised intentions. Intent therefore furnishes no basis for severance of the arbitration clause here.
The majority's suggestion that the arbitration clause alone be examined by a court (p 576) is, for the reasons indicated, beside the point when capacity of an infant to contract is the issue. The right of disaffirmance granted to infants by the Legislature, whether absolute in the case of younger minors, *582 as the majority concedes, or conditional in the case of older minors, is a protective sanction directed against the adult parties to such contracts and not a function of any provision contained within these agreements. It covers the entire contract, not just part of it, and if successfully asserted, sweeps the arbitration clause in its wake.
Finally, it must be noted that the majority, instead of remitting for a finding of reasonableness, has gratuitously concluded that this arbitration clause was in fact reasonable because it was proffered to the inexperienced infant by an admittedly sophisticated and experienced theatrical agent in the form of a so-called "standard" contract devised by the agent's trade association. Whether this clause might be reasonable if entered into by an adult is not the issue. It is, rather, whether, given his individual circumstances of immaturity, it was reasonable for appellant to agree to any of the terms of the contract. We venture to guess that it is most unlikely that even an adult entertainer whose career was sufficiently established so that he had real bargaining power would be willing to accept an unmodified form contract created for the protection of agents. Obviously, such a contract should be scrutinized with especial care when, as here, it is offered by an agent to a minor whose career is just beginning.[2] Even under the affirmers' premise of severability, agreement by an infant to an arbitration clause which has the effect of stripping him of the important special safeguards, courts are constrained to employ on his behalf, raises a question as to the reasonableness and providence of his actions.
Accordingly, we would reverse the order of the Appellate Division and remit the matter to Special Term to hear and determine whether the agreement, including its arbitration clause, was a reasonable and prudent one for this infant to enter into at the time he did.
Order affirmed, with costs.
NOTES
[1] The California statute interpreted in the Brodel case by Mr. Justice (later Chief Justice) TRAYNOR was the model for New York's General Obligations Law (§ 3-105).
[2] Although the majority refers to appellant as well established and famous, we note that the contract in issue was signed when he was neither of those things.