Fuchsberg, J.
(dissenting). The question before us is not whether this contract, or even its arbitration clause, is valid, but rather, whether appellant, who was legally an infant when he signed it, had the capacity to make such a contract. In our view, the majority has overlooked this distinction entirely.
In its proper context, arbitration is supported by strong statutory and decisional policy (Matter of Weinrott [Carp] 32 NY2d 190; Matter of National Equip. Rental [American Pecco Corp.] 28 NY2d 639; Hirsch v Hirsch, 37 NY2d 312; Board of Educ., Union Free School Dist No. 3, Town of Huntington v Associated Teachers of Huntington, 30 NY2d 122). However, overriding or competing legislative public policy can be and has been found to interdict arbitration where its purposes and methods, however laudable, conflict with other concerns for which administrative or judicial procedures are more appropriate Mutter of Aimcee Wholesale Corp. [Tomar Prods.], 21 *578 NY2d 621; cf. Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46; Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617; and see Chemick v Hartford Acc. & Ind. Co., 8 AD2d 264, affd 8 NY2d 756; Benfante v Commercial Ins. Co., 5 Misc 2d 772; Matter of Coughlin [MVAIC] 45 Misc 2d 672; Agreement to arbitrate future controversies as binding on infant, Ann., 78 ALR2d 1292).
Let us examine that policy as it applies to the protection of the contracting infant here. Though the affirmers suggest that, because he would be considered an adult under present law (General Obligations Law, § 1-202), the legislative public policy which might otherwise contravene arbitration of his capacity to sign this contract has become irrelevant, that is not the legislative design. Section 3-101 of the General Obligations Law (formerly Debtor and Creditor Law, § 260; L 1941, ch 327) has always observed a distinction between minors under the age of 18 and those over that age but under 21 years. When the Legislature lowered the age of majority to 18 years, it expressly retained all of the provisions of section 3-101 of the General Obligations Law applicable to these older minors, provided they signed their contracts before September of 1974, the case here. Accordingly, the conditional right of disaffirmance which appellant possessed when he signed his contract has not been abrogated (and see General Obligations Law, § 1-202, statement of legislative intent; L 1974, ch 898, § 5) and appellant is to be treated, under the statute, as a minor with the right to call his capacity to sign the contract into question.
Moreover, section 3-105 of the General Obligations Law also still applies to the appellant to the full extent that it did when he signed the contract. And, as the majority opinion itself notes, the legislative history of section 3-105 indicates an intent to observe a dichotomy between younger and older minors. Failure to obtain Surrogate’s Court approval under the pattern of that statute renders the adult who contracts with a younger minor without the special statutory protection. Such failure in the case of a contract with an older minor simply puts the adult back where he stood under section 3-101, subject to the burden of proof that the contract was "reasonable and provident when made”. (See Bright Tunes Prods. v Lee, 43 Misc 2d 21; Nigro v Celestial Music Corp., NYLJ, March 17, 1969, p 2, col 3 [Hofstadter, J.], affd 33 *579 AD2d 1003; Le Bow v Rolin, NYLJ, Feb. 21, 1968, p 17, col 7 [Spiegel, J.], affd 30 AD2d 918.) It follows that, while section 3-105 is thus not dispositive of appellant’s rights, since court approval was not obtained, the policy expressed in it is most relevant to a determination of reasonableness and providence under section 3-101 when the contract in issue, as here, is of the entertainment kind toward which section 3-105 is specifically directed.
Indeed the report of the Law Revision Commission (NY Legis Doc, 1961, No. 65 [I]), whose findings shaped the statute, emphasized that contracts made by minors in the entertainment and sports industries are unique, especially since the potential for exploitation of the person of a minor, as distinguished from simply his material assets, tends to be vastly greater in those callings than in more conventional occupations. Both the report itself and the study done at the direction of the commission (Touster, Contracts Relating to the Services of Talented Minors and the Treatment of Their Earnings Therefrom, 1961 Report of NY Law Rev Comm, p 269) further indicate that the Legislature was concerned not only about the effects of such contracts on young children but on older ones as well. Interestingly, the report, noting that a parent who signed or guaranteed such a contract for his child could be held in damages even where the law would not honor the contract as against the minor (Lustig v Schoonover, 51 NYS2d 156, affd 269 App Div 830; Gervis v Knapp, 182 Misc 311), indicates apprehension that even this might have the effect of inducing parents to overlook the best interest of a young child or of inducing an older minor to perform an improvident contract out of a sense of filial loyalty (1961 Report of NY Law Rev Comm, p 259; see, also, Lee v Silver, 262 App Div 149, affd 287 NY 575; cf. Aborn v Janis, 62 Misc 95, affd 122 App Div 893).
Furthermore, the nature of the inquiry which the Surrogate’s Court is directed to make before it approves a contract under section 3-105 of the General Obligations Law is illuminating. A guardian of the infant’s property must be appointed and a portion of his income must be set aside against his majority. Manifesting that the court’s concern for the infant’s welfare is to be continual, the statute permits the court to revoke its approval if, at any time while a contract is in force, it appears that its provisions are no longer in the best interests of the minor. The court’s concern is also as to "whether *580 the terms of the contract are reasonable in the light of the then financial and educational interests of the minor as well as the proper development of his talents and his chances for success in the profession.” (Warner Bros. Pictures v Brodel, 31 Cal 2d 766, 775.)[1]
The courts must consider these same factors in determining, under section 3-101 as well, whether the contract was reasonable and provident when made. The absence of Surrogate’s Court approval does not in any way permit an adult to impose upon a minor of any age a contract which does not meet these requirements. As the majority’s citation to the legislative history indicates, when an adult who contracts with a minor fails to obtain section 3-105 advance approval, he is deemed to have undertaken the risk that, upon a disaffirmance tested under section 3-101, his contract will be held, in the court’s judgment, not to be in the best interests of the minor.
It is starkly clear, therefore, that the Legislature’s decision to preserve the rights and protections previously afforded to older minors by the statutes and their legislative history constitutes a strong statement of legislative policy. We have no power to ignore that policy even when we may think it unwise or unnecessary (Montgomery v Daniels, 38 NY2d 41, 53; People v Broadie, 37 NY2d 100, 117-118). That means that we are required to treat appellant as the infant he legally was when he signed the contract.
Certainly, the continuing supervision of the Surrogate’s Court prescribed for younger and older minors alike, even when approval has been given, could not very well be carried out by an arbitrator. There is no assurance that an arbitrator, who draws his powers from the four corners of the contract itself and is not obliged to apply the law, will make an adequate determination, under proper guidance, of the extent to which the contract as a whole was "reasonable and provident when made” (General Obligations Law, § 3-101), especially since that determination requires consideration not just of the infant’s age, but of his educational and developmental situation, the propensity for abuse of talent by the purveyor of the contract, and all of the other factors with which courts would have to concern themselves (see Mara v Nevins, 122 NYS2d 225; Sazani v McNally, 8 Misc 2d 526; cf. Eastern *581 Airlines v Stuhl, 65 Misc 2d 901, affd 68 Misc 2d 629; Bach v Long Is. Jewish Hosp., 49 Misc 2d 207; De Jaeger v Chilson, 185 Misc 156; Rappaport v Guidone, 63 NYS2d 239).
As our court has held in another setting, the very strengths of arbitration become its weakness when, as here, a contravening, strong legislative public policy is involved. The decisions of arbitrators are not reviewable for errors of law (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, supra; see, also, Lentine v Fundaro, 29 NY2d 382). That limitation may favor practical and expedient decision making, but, advantageous as this may be in other types of cases, it is antithetical to the intended protection of infants.
Jurisprudential and statutory concern for safeguarding infants is not of recent vintage. Substantive and procedural rules of considerable refinement have been developed for the protection of our young over literally centuries of effort and may not be set aside lightly (see 3 Holdsworth, History of English Law, p 517, and cases cited therein; Zouch v Parsons, 3 Burr 1794; Year Book, 7 Edward IV, p 6; Huffcut, Agency [2d ed], § 15: Keane v Boycott, 2 H Bl 511; Harvey v Ashley, 3 Atkyns 607; Casey v Kastel, 237 NY 305; Infancy as a Defense to a Contract, 1938 Report of NY Law Rev Comm, p 99; NY Legis Doc, 1938, No. 65 [I]).
Nor should Matter of Weinrott [Carp] (32 NY2d 190, supra), a case not involving infants, serve as support for the affirmers’ position. In Weinrott, we simply held that fraud in the inducement is an issue for an arbitrator whenever there is no demonstration that an arbitration clause itself was procured by such fraud (id., p 197), since it must be deemed to be the intent of the parties to submit the validity of the contract to arbitration (id., p 198). But a contract entered into by an infant may be improvident and unreasonable no matter how clearly he intended it. Indisputably, the Legislature, in passing both sections 3-101 and 3-105 of the General Obligations Law, was concerned with the protection of minors even from their own immature and ill-advised intentions. Intent therefore furnishes no basis for severance of the arbitration clause here.
The majority’s suggestion that the arbitration clause alone be examined by a court (p 576) is, for the reasons indicated, beside the point when capacity of an infant to contract is the issue. The right of disaffirmance granted to infants by the Legislature, whether absolute in the case of younger minors, *582 as the majority concedes, or conditional in the case of older minors, is a protective sanction directed against the adult parties to such contracts and not a function of any provision contained within these agreements. It covers the entire contract, not just part of it, and if successfully asserted, sweeps the arbitration clause in its wake.
Finally, it must be noted that the majority, instead of remitting for a finding of reasonableness, has gratuitously concluded that this arbitration clause was in fact reasonable because it was proffered to the inexperienced infant by an admittedly sophisticated and experienced theatrical agent in the form of a so-called "standard” contract devised by the agent’s trade association. Whether this clause might be reasonable if entered into by an adult is not the issue. It is, rather, whether, given his individual circumstances of immaturity, it was reasonable for appellant to agree to any of the terms of the contract. We venture to guess that it is most unlikely that even an adult entertainer whose career was sufficiently established so that he had real bargaining power would be willing to accept an unmodified form contract created for the protection of agents. Obviously, such a contract should be scrutinized with especial care when, as here, it is offered by an agent to a minor whose career is just beginning.[2] Even under the affirmers’ premise of severability, agreement by an infant to an arbitration clause which has the effect of stripping him of the important special safeguards, courts are constrained to employ on his behalf, raises a question as to the reasonableness and providence of his actions.
Accordingly, we would reverse the order of the Appellate Division and remit the matter to Special Term to hear and determine whether the agreement, including its arbitration clause, was a reasonable and prudent one for this infant to enter into at the time he did.
Judges Jones and Cooke concur with Judges Gabrielli and Wachtler; Judge Fuchsberg dissents and votes to reverse in a separate opinion in which Chief Judge Breitel and Judge Jasen concur.
Order affirmed, with costs.

. The California statute interpreted in the Brodel case by Mr. Justice (later Chief Justice) Traynor was the model for New York’s General Obligations Law (§ 3-105).

. Although the majority refers to appellant as well established and famous, we note that the contract in issue was signed when he was neither of those things.