Wachtler, J.
 

 This is the second time this case has been before this court in a long and tortuous journey which started over five years ago. It first appeared in 1967, when appellants sought to stay arbitration proceedings on the ground that the contract containing the arbitration clause was induced by fraud. In affirming the denial of a stay we impliedly adhered to the 1957 decision of
 
 Matter of Wrap-Vertiser Corp.
 
 (Plotnick) (3 N Y
 
 *193
 
 2d 17) which held that fraud in the inducement of a contract was an issue for the court and not the arbitrators. The reason for our denial of the stay was that the evidence did not raise a substantial question of fact as to the existence of such fraud
 
 (Matter of Carp [Weinrott],
 
 20 N Y 2d 934).
 

 Following our decision, the parties proceeded to arbitration. Protracted hearings resulted in an award directing appellants to pay respondents $30,713.47, and that award has been upheld by both the Supreme Court and the Appellate Division. On this appeal we have decided to consider, among other things, whether our determination in
 
 Matter of Wrap-Vertiser Corp. (Plotnick)
 
 (3 N Y 2d 17,
 
 supra)
 
 has retained its vitality in the light of subsequent experience and contemporary attitudes concerning the role of arbitration in the settlement of commercial disputes and to decide whether in the future, fraud in the inducement of a contract containing a broad arbitration clause should be an issue for the arbitrators.
 

 The substantive disagreement in this case arises from a licensing and joint-venture agreement ¿pursuant to which the appellants were licensed to use a process developed for the construction of single- and double-story buildings. The process itself utilized panels made of plywood and polyurethane filler which, it is alleged, contained sufficient strength to make conventional framing of each structure unnecessary. Assertions of fraud in the inducement consist of alleged misrepresentations regarding the capabilities of the process, respondents’ experience in using it, its approval by governmental agencies, ownership of the process, and its actual use in the construction of model homes.
 

 On this appeal, appellants urge that the arbitrators erred in rejecting an offer of newly discovered evidence concerning fraud in the inducement. The offer, of course/ followed our judicial determination that no substantial issue of fraud was presented. Appellants’ contention was adequately answered below: “ Viewing [appellants’] argument on this point in the light most favorable to them and thus assuming that the arbitrators’ decision was based upon their determination that the issue of fraud in the inducement has been determined adversely to [appellants] by the courts and that this was not, in fact, the holding of the courts, at most it then appears that the arbitrators erred in appli
 
 *194
 
 cation of a rule of law. But as stated in
 
 Matter of Aimcee Wholesale Corp. v. Toner Products
 
 (21 N Y 2d 621, 626): ‘ Arbitrators are not bound by rules of law and their decisions are essentially final. Certainly, the awards may not be set aside for misapplication of the law (CPLR 7511) ’ ”.
 

 We turn now to review the decision which gave birth to this protracted litigation
 
 (Matter of Wrap-Vertiser Corp. [Plotnick],
 
 3 N Y 2d 17,
 
 supra).
 
 Read strictly,
 
 Wrap-Vertiser
 
 concerned itself solely with the contractual language employed by the parties in an arbitration provision, giving that language a narrow interpretation. Some courts have interpreted it accordingly
 
 (Matter of Amphenol Corp. [Microlab],
 
 49 Misc 2d 46, 47, affd. 25 A D 2d 497;
 
 Matter of Fabrex Corp. [Winard Sales Co.],
 
 23 Misc 2d 26). Read broadly, however,
 
 Wrap-Vertiser
 
 asserts the legal proposition that fraud in the inducement, coupled with a claim for rescission, is always a matter for judicial determination prior to arbitration. Either reading, we now believe, frustrates rather than promotes both the intention of the parties and the salutary function of arbitration agreements.
 

 There is no doubt that parties can contract to submit the issue of fraud in the inducement to arbitration
 
 (Atcas
 
 v.
 
 Credit Clearing Corp. of Amer.,
 
 292 Minn. 334;
 
 Lawrence Co.
 
 v.
 
 Devonshire Fabrics,
 
 271 F. 2d 402, 410 [2d Cir.]). The problem lies in discerning exactly what issues the parties have committed to the jurisdiction of the arbitrators. Courts construing differently worded but nonetheless similarly broad arbitration agreements have come to different conclusions as to whether the parties intended to submit the issue of fraud in the inducement to the arbitrators. (Compare
 
 Prima Paint
 
 v.
 
 Flood & Conklin,
 
 388 U. S. 395;
 
 Lawrence,
 
 271 F. 2d 402,
 
 supra; Necchi Sewing Mach. Sales Corp.
 
 v.
 
 Sewline Co.,
 
 194 F. Supp. 602, 603 [S. D. N. Y.], with
 
 Matter of Wrap-Vertiser Corp. [Plotnick],
 
 3 N Y 2d 17,
 
 supra; Reynolds Jamaica Mines
 
 v.
 
 La Societe Navale Caennaise,
 
 239 F. 2d 689, 691;
 
 Atcas,
 
 292 Minn. 334,
 
 supra.)
 

 In
 
 Wrap-Vertiser
 
 (3 N Y 2d 17, 18,
 
 supra)
 
 the arbitration clause called for the arbitration of any question “ as to the validity, interpretation or performance of this agreement ”. There the court held that such a provision did not contemplate the submission of fraud in the inducement to the arbitrators. Yet in the case of
 
 Matter of Amphenol Corp. (Microlab)
 
 (49 Misc
 
 *195
 
 2d 46, 47,
 
 supra)
 
 the court held the following arbitration agreement to include submission of the issue of fraud in the inducement to arbitration:
 
 “
 
 In the event of any dispute, controversy or misunderstanding arising between the. parties hereto which may directly or indirectly concern or involve any of the terms, covenants or conditions hereof or the construction of any of its provisions or the general subject matter thereof, the parties agree to submit. ’ ’
 

 Similarly in
 
 Matter of Fabrex Corp. (Winard Sales Co.)
 
 (23 Misc 2d 26,
 
 supra)
 
 the court held that an arbitration clause extending to
 
 ‘1
 
 Any controversy arising under or in relation to this contract ” was meant to cover fraud in the inducement. In the case of
 
 Housekeeper
 
 v.
 
 Lourie
 
 (39 A D 2d 280, 281) the court held that the clause agreeing to submit
 
 “
 
 any controversy or claim arising out of or relating to this contract or the subject matter hereof or the breach hereof ” to arbitration included the submission of fraud in the inducement to the arbitrators.
 

 The
 
 Amphenol
 
 and the
 
 Fabrex
 
 cases distinguished
 
 Wrap-Vertiser
 
 on the grounds that the
 
 Wrap-Vertiser
 
 arbitration clause was narrower. The court in
 
 Matter of Coler (GCA Gorp.)
 
 (39 A D 2d 656) went so far as to call the
 
 Wrap-Vertiser
 
 situation
 
 sui generis.
 
 (See, also,
 
 Matter of Fabrex Corp. (Winard Sales Co.],
 
 23 Misc 2d 26, 28,
 
 supra.)
 

 A careful reading of
 
 Wrap-Vertiser
 
 demonstrates that it was not
 
 sui generis,
 
 nor is
 
 Wrap-V ertiser
 
 distinguishable from
 
 Amphenol
 
 and
 
 Fabrex
 
 solely on the basis of construction of the contractual arbitration clause. The difference between
 
 WrapVertiser
 
 and
 
 Amphenol
 
 and
 
 Goler
 
 lies more in a different policy regarding arbitration clauses than in the different arbitration clauses under consideration. In this regard it is noted that all of the cases involved what could fairly be termed broad arbitration agreements.
 

 The
 
 Amphenol
 
 and
 
 Goler
 
 cases represent a trend away from the
 
 Wrap-V ertiser
 
 policy of the very narrow construction of arbitration agreements. (See, also,
 
 Matter of Kellogg Co. (Monsanto Chem. Co.],
 
 9 A D 2d 744, 745.) Our court, too, has given some indications of a willingness to expand the narrow confines of the
 
 Wrap-Vertiser
 
 approach. In
 
 Matter of Exercycle Corp. (Maratta)
 
 (9 N Y 2d 329, 334) we said: “ Once it be ascer
 
 *196
 
 tained that the parties broadly agree to arbitrate a dispute ‘ arising out of or in connection with ’ the agreement, it is for the arbitrators to decide what the agreement means and to enforce it according to the rules of law which they deem appropriate in the circumstances.” In the case now before us the arbitration clause reads:
 
 [1]
 
 ‘ All disputes, controversies or claims arising hereunder, the interpretation of any of the provisions or the performance called for thereunder shall be settled by arbitration in New York, in accordance with the rules then obtaining of the American Arbitration Association and any decision arising therefrom may be entered as a judgment in any court of competent jurisdiction.”
 

 This provision is clearly a
 
 “
 
 broad ” provision, and whether or not it will be given effect depends more on policy than on the wording of the provision itself.
 

 In the case of
 
 Atcas
 
 v.
 
 Credit Clearing Corp. of Amer.
 
 (292 Minn. 334, 338,
 
 supra)
 
 the Supreme Court of Minnesota held that fraud in the inducement was to be decided by the courts under an arbitration provision which mandated that
 
 “
 
 Any controversy whatsoever relating to this Agreement shall be settled by arbitration ’ ’. The court stated that
 
 ‘ ‘
 
 the contract contains no reference to fraud in the inducement or how that issue should be resolved if it is raised”
 
 (id.,
 
 at p. 341) and, therefore, since it was not a specified issue, it could not be submitted to arbitration. Such a demand for specificity as to which particular issues should be submitted to the arbitrators would make the drafting of arbitration agreements burdensome, confusing and often impossible.
 

 The alternative to making parties specifically name fraud in the inducement as an issue they wish to go to arbitration would be to give full effect to a broad arbitration clause. A broad arbitration, agreement reflects a general desire by the parties to have all issues decided speedily and finally by the arbitrators. If, in the case at bar, we hold that the arbitration agreement, did not contemplate the submission of fraud in the inducement to the arbitrators we would be opting for the ‘ ‘ specifically enumerated ” approach since it is difficult to construct any generic wording which would have a broader sweep than the provision used in this case.
 

 
 *197
 
 The theoretical underpinning of the
 
 Wrap-V ertiser
 
 approach can be found in the assertion that one fraud is fraud to all. There is a long line of New York cases holding that an arbitration agreement was generally not separable from the principal contract (see, e.g.,
 
 Matter of Cheney Bros. [Jorocco
 
 Dresses], 218 App. Div. 652, 653, revd. on other grounds 245 N. Y. 375;
 
 Matter of Finsilver, Still & Moss
 
 v.
 
 Goldberg, Maas & Co.,
 
 253 N. Y. 382, 391;
 
 Matter of Kramer & Uchitelle [Eddington Fabrics Corp.],
 
 288 N. Y. 467, 472;
 
 Matter of Lipman [Haeuser Shellac Co.],
 
 289 N. Y. 76, 79;
 
 Matter of Levinsohn Corp. [Joint Bd. of Cloak Makers’ Union],
 
 299 N. Y. 454 [by implication];
 
 Matter of Terminal Auxiliar Maritima [Winkler Credit Corp.],
 
 6 N Y 2d 294, 298) and, therefore, if the substantive provisions of the contract were to fall, the entire contract including an arbitration clause would also fall.
 

 The
 
 Wrap-Vertiser
 
 case continued the nonseparability approach. It was the first case where this court directly confronted the separability issue as applied to fraud in the inducement and it did so by dictum which asserted that the nonseparability doctrine applies to fraud in the inducement. ‘ ‘ If he were seeking rescission, none of the items in his arbitration demand could be arbitrated until the issue of rescission had been determined in the courts.” (3 N Y 2d 17, 19,
 
 supra.)
 

 A contrary view was taken by the seminal case of
 
 Lawrence Co.
 
 v.
 
 Devonshire Fabrics
 
 (271 F. 2d 402 [2d Cir.],
 
 supra)
 
 which held that an arbitration clause is separable from the balance of the contract. (See, also,
 
 Lummus Co.
 
 v.
 
 Commonwealth Oil Refining Co.,
 
 280 F. 2d 915, 925.) The cases holding that the arbitration clause is separable assert that the fraud must go to the arbitration provision itself in order to avoid submission to arbitration.
 
 (Hamilton Life Ins. Co. of N. Y.
 
 v.
 
 Republic Nat. Life Ins. Co.,
 
 408 F. 2d 606, 610.) Of course, if the alleged fraud was part of a grand scheme that permeated the entire contract, including the arbitration provision, the arbitration provision should fall with the rest of the contract. (See
 
 Mosley
 
 v.
 
 Electronics Facilities,
 
 374 U. S. 167;
 
 Housekeeper
 
 v.
 
 Lourie,
 
 39 A D 2d 280,
 
 supra.)
 

 The technical argument about separability or nonseparability has often obscured the main goal of the court’s inquiry which is
 
 *198
 
 to discern the parties’ intent.
 
 [1]
 
 (See, generally, 43 St. John’s L. Rev. 1.) When the parties to a contract have reposed in arbitrators all questions concerning the ‘ ‘ validity, interpretation or enforcement ” of their agreement, they have selected their tribunal and no doubt they intend it to determine the contract’s “validity” should the necessity arise. Judicial intervention, based upon a nonseparability contract theory in arbitration matters prolongs litigation, and defeats, as this case conclusively demonstrates, two of arbitration’s primary virtues, speed and finality (see
 
 Amicizia Societa Nav.
 
 v.
 
 Chilean Nitrate & Iodine Sales Corp.,
 
 274 F. 2d 805, 808, cert. den. 363 U. S. 843).
 

 There is nothing in our statutory law which prohibits our conclusion. CPLR 7503 (subd. [a]) states: “ A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. When there is no substantial question whether a
 
 valid agreement
 
 was made or complied with * * * the court .shall direct the parties to arbitrate. ’ ’ (emphasis added).
 

 The “valid agreement” referred to concerns a valid agreement to arbitrate
 
 (Durst
 
 v.
 
 Abrash,
 
 22 A D 2d 39, 41, affd. 17 N Y 2d 445;
 
 Housekeeper
 
 v.
 
 Lourie,
 
 39 A D 2d 280, 283, 284,
 
 supra).
 
 Since we now hold that an arbitration provision of a contract is separable, the agreement to arbitrate would be ‘1 valid ’ ’ even if the substantive portions of the contract were induced by fraud.
 

 The result we suggest in this case is consistent with the policy adopted by the Federal courts, and is significant since the Federal arbitration statute is almost identical to, and is derived from, our own arbitration statute. (See
 
 Prima Paint
 
 v.
 
 Flood
 
 
 *199
 

 & Conklin,
 
 388 U. S. 395,
 
 supra; Lawrence Co.
 
 v.
 
 Devonshire Fabrics,
 
 271 F. 2d 402 [2d Cir.],
 
 supra.)
 

 The policy arguments for overruling the
 
 Wrap-Vertiser
 
 approach to fraud in the inducement are as compelling as the legal arguments.
 

 The case at bar demonstrates the problem inherent in allowing parties to claim that fraud in the inducement, even under a broad arbitration clause, should be an issue triable by the courts. As often happens in this type of case, appellants moved to stay the arbitration on the ground that there was fraud in the inducement of the contract. Although appellants’ contention was
 
 “
 
 not supported by the record and is refuted by documentary evidence ”
 
 (Matter of Carp [Weinrott],
 
 28 A D 2d 671-672), the arbitration continued to be stayed while that preliminary issue laboriously worked its way through the New York court system. Finally, after the issue fell exhausted at the Court of Appeals, the arbitration hearings commenced.
 

 The CPLR arbitration provisions (CPLR 7501
 
 et seq.)
 
 evidence a legislative intent to encourage arbitration. Certainly the avoidance of court litigation to save the time and resources of both the courts and the parties involved make this a worthwhile goal. One way to encourage the use of the arbitration forum would be to prevent parties to such agreements from using the courts as a vehicle to protract litigation. This conduct has the effect of frustrating both the initial intent of the parties as well as legislative policy. In the case at bar, there were 21 hearings and 2,750 pages of testimony. If not for the arbitration, that entire burden would have been placed on our court system. Indeed, had the case been tried in the formality of the courtroom, it would have taken longer to dispose of than it did before the arbitrators. A broad arbitration clause should be given the full effect of its wording in order to implement the intention of the parties. Of course, where a form contract is involved or an arbitration provision seems to be less than broad, a court should give the provision and the circumstances surrounding its inclusion in the contract great scrutiny. As a general rule, however, under a broad arbitration provision the claim of fraud in the inducement should be determined by arbitrators.
 
 [2]
 

 
 *200
 
 In this case it is unnecessary to order arbitration of the fraud issue. Appellants had a full chance to present that issue to the courts. There is no need to give appellants another bite of an apple that has already been chewed to the core. (Cf.
 
 Nelly
 
 v.
 
 Mayor & City Council of Baltimore,
 
 224 Md. 1.)
 

 Appellants
 
 next urge error
 
 in the failure of the arbitration panel’s chairman to disclose a relationship which might have suggested a possibility of bias. The arbitrator in question, Mr. Vogel, was counsel to FMC, a huge manufacturing and processing firm. A Mr. Hait was the chairman of the board of FMC. Shanks, a claimant in this case, was a director and member of the executive committee of Georgia-Pacific Corp. Hait became a director of Georgia-Pacific while the arbitration in question here was proceeding. Appellants claim that Hait must have been screened by Shanks before becoming a director of Georgia-Pacific. A decision by Vogel, Halt’s subordinate at FMC,
 
 *201
 
 against Shanks would allegedly embarrass Hait. It is here that the possibility of bias is claimed to exist.
 

 We believe it is incumbent upon an arbitrator to disclose any relationship which raises even a suggestion of possible bias. This case, however, involves no direct relationships between arbitrator and client and none of the other exacerbating circumstances presented in
 
 Matter of Baar & Beards, Inc. (Oleg Cassini, Inc.)
 
 (37 A D 2d 106, revd. on other grounds 30N Y 2d 649). Nor are the relationships as substantial here as they were in
 
 Matter of Cross Props. (Gimbel Bros.)
 
 (12 N Y 2d 806) where we affirmed an arbitration award. Nor is this a case involving affirmative misleading statements concerning a relationship which would raise a significant possibility of bias, as in
 
 Matter of Milliken Woolens (Weber Knit Sportswear)
 
 (11 A D 2d 166, affd. 9 N Y 2d 878).
 

 It is true that Vogel was a counsel to PMC Corp. of
 
 [1]
 
 which Hait was the principal executive officer. Vogel, however, was counsel to but one of PMC Corporation’s 24 divisions. The company headquarters were in San J ose, California, where Hait lived and worked. Vogel worked in New York City. Shanks, a claimant in the case, and Hait’s codirector at Georgia-Pacific, also lived and worked in New York City. Shanks swore he had seen Hait only twice and then they only spoke briefly. Shanks did not even know of the Vogel-Hait relationship.
 

 Thus we have only a weak line of indirect relationships purporting to tie an arbitrator to a claimant through a third party who is known only very casually by both parties. The decision of the arbitrators was unanimous, and there is no evidence of any bias. It would have been preferable if Vogel had disclosed the relationship, however distant, but in the modern world of sprawling corporations and rapid travel, it would be most difficult to find a large number of potential well-qualified arbitrators who did not have some indirect relationship with one of the parties to the litigation. After the protracted hearings consumed by this case, we think the asserted relationship too remote and speculative to provide a basis for reversal.
 

 We have examined the remaining points urged by appellants and we find no basis for upsetting the award. The order should be affirmed.
 

 
 *202
 
 Chief Judge Fuld and Judges Burke, Jasen, Gabrielle and Jones concur; Judge Breitel taking no part.
 

 Order affirmed, with costs.
 

 [1]
 

 . See
 
 Matter of Amerotron Corp. (Shapiro Woolen Co.)
 
 (3 A D 2d 899, affd. 4 N Y 2d 722). In the
 
 Amerotron
 
 ease, the court held that by suing for damages, the respondent affirmed the contract and could not rely on the nonseparability doctrine to defeat the arbitration clause. The court then held that the arbitration provision was broad enough to cover the submission of the issue of fraud in the inducement to the arbitrators. By implication, the court would have held that the fraud issue had to he decided by the court if the respondent had sued for rescission
 
 even though the court had determined that the intent of the parties (i.e., the broad arbitration clause) was to have the issue submitted to arbitration.
 
 Here, then, is a clear example of how the technical doctrine of non-separability could have overridden the intent of the parties had the respondent’s attorney sued for rescission rather than damages. The determination of the fraud issue should be decided by the intent not the pleadings of the parties.
 

 [2]
 

 . An additional, and desirable, result of this decision is to bring New York State law in accord with Federal law relating to fraud in the inducement.
 

 
 *200
 
 In
 
 Prima Paint
 
 (388 U. S. 395, 404,
 
 supra)
 
 the Supreme Court held that when interstate commerce is involved the Federal law as to arbitration applies (e.g., under a broad arbitration clause, fraud in the inducement goes to the arbitrators). The
 
 Prima Paint
 
 case created the possibility that where State laws differ from the Federal law there could be a significant possibility of forum shopping. However, in
 
 Matter of Rederi (Dow Chem. Co.)
 
 (25 N Y 2d 576, 579, 583) this court held that where interstate commerce or maritime law was involved, Federal law should be applied even if the case was brought in a State court. In
 
 Bernhardt
 
 v.
 
 Polygraphic Co.
 
 (350 U. S. 198), the Supreme Court held that where there is a local transaction governed exclusively by State law, the State law would be applied even in a Federal court.
 

 The
 
 Bederi
 
 and
 
 Bernhardt
 
 cases effectively inhibit a party from forum shopping, but it is still bothersome to have different rules applied in interstate commerce cases from those applied in intrastate commerce cases. In the
 
 Bederi
 
 case
 
 (supra,
 
 p. 580) this court stated that to apply other than Federal law in the State court in matters involving interstate commerce or maritime law would
 
 “
 
 undermine the need for nationwide uniformity in the interpretation and application of arbitration clauses in foreign and interstate transactions ”. The need for uniformity between the State and Federal law is probably not as great as the need for a uniform law for all interstate commerce. Still it is a rather technical distinction to apply one law or another depending on whether interstate commerce is involved. If we were to adhere to our former approach, we would be making the existence of interstate commerce (or the lack of it) determinative with respect to the application of the arbitration provision. Clearly no party makes a decision on the scope of arbitration based on whether the contract in question involves interstate commerce.