Gabrielli and Wachtler, JJ.
The petitioner is a well-known entertainer in the television industry. The respondent *572 is a "personal manager” in the entertainment profession. On January 16,, 1974 they signed a contract whereby the petitioner agreed to employ the respondent as his agent for a period of three years. In exchange for his expert management services,' respondent would receive compensation at the rate of 15% of petitioner’s gross income. The contract is a standard form used and approved by the conference of personal managers in the entertainment industry. It contains an arbitration clause which provides that "In the event of any dispute under or relating to the terms of this agreement, or the breach, validity or legality thereof, it is agreed that the same shall be submitted to arbitration”. In addition to the standard features the contract contains a rider giving the respondent the option to extend the agreement for four more years provided that petitioner’s income exceeds $35,000. This figure was later raised to $50,000 by a superseding agreement signed on February 19, 1974.
When the petitioner signed these agreements he was 19 years old and thus, according to the law in effect at that time, he was legally an infant (General Obligations Law, § 1-202; L 1974, ch 898, § 1).
In April, 1974 the final agreement between the parties was submitted to the Surrogate for approval under section 3-105 of the General Obligations Law but the application was not processed by the court nor further pursued by the parties.
In October, 1974 petitioner advised respondent in writing that he disaffirmed the agreement "dated February 19, 1974 and any antecedent agreements * * * on the ground that all such arrangements were entered into during my infancy.” In November, 1974 respondent served a demand for arbitration indicating "Nature of Dispute: Freddie Prinze’s alleged disaffirmance of contract.”
Petitioner then applied to stay arbitration on the ground that there was no valid agreement to arbitrate (CPLR 7503). Specifically he urged that his disaffirmance invalidated the agreement in its entirety including the arbitration clause. Respondent argued that the petitioner did not have an absolute right to disaffirm since section 3-101 of the General Obligations Law then provided that "A contract made by an infant after he has attained the age of eighteen years may not be disaffirmed by him on the ground of infancy, where the contract was made in connection with a business in which the infant was engaged and was reasonable and provident when *573 made.” Thus, he contends, validity of the disaffirmance depended upon the reasonableness of the agreement. Since this would determine the continuing validity of the agreement, the question of reasonableness should be decided by the arbitrators.
The petitioner argued that section 3-105 of the General Obligations Law rendered the agreement unreasonable as a matter of law and thus subject to an absolute right of disaffirmance. The relevant portions of that section provide:
"1. A contract made by an infant or made by a parent or guardian of an infant, or a contract proposed to be so made, under which (a) the infant is to perform or render services as an actor, actress, dancer, musician, vocalist or other performing artist, or as a participant or player in professional sports, or (b) a person is employed to render services to the infant in connection with such services of the infant or in connection with contracts therefor, may be approved by the supreme court or the surrogate’s court as provided in this section * * * If the contract is so approved the infant may not, either during his minority or upon reaching his majority, disaffirm the contract on the ground of infancy or assert that the parent or guardian lacked authority to make the contract. * * *
«2 * * * d. No contract shall be approved if its term, including any extensions thereof by option or otherwise, extends for a period of more than three years from the date of approval of the contract”. (Emphasis added.)
As indicated earlier, here the initial term of the contract is for three years, with an option to renew for an additional four years. Thus the petitioner could be bound for a total of seven years.
Special Term denied the application for a stay and directed the parties to proceed to arbitration "on the authority of Matter of Weinrott v Carp, 32 NY2d 190, 198”. The Appellate Division affirmed with two Justices dissenting (48 AD2d 315).
Initially we note that the age of majority in this State has been lowered from 21 to 18 as of September 1, 1974 (General Obligations Law, § 1-202; L 1974, ch 898). Thus if the contract involved in this litigation had been made several months later than it was, the petitioner would have no right to disaffirm at all. The change in the law however has no effect on the power to disaffirm contracts made prior to its effective date (ibid.). *574 Both sides agree that the petitioner had some power to dis-affirm and the validity of the disaffirmance depends on the reasonableness of the agreement. They disagree, however, as to whether the question of reasonableness should be decided by the courts or the arbitrators.
As we frame them, three issues are presented for our consideration: (1) is an arbitration clause in an entertainment contract entered into by an individual over 18 years of age, containing an option for renewal for four years, unreasonable and improvident as a matter of law and, therefore invalid at its inception pursuant to section 3-105 of the General Obligations Law; (2) if the clause cannot be said to be unreasonable as a matter of law, does public policy nevertheless mandate that the question of reasonableness be resolved by the judicial process; (3) Finally, is the clause otherwise enforceable under CPLR 7503.
Prefatorily, it should be emphasized that in the absence of a compelling public policy, arbitration is a preferred means for the settlement of disputes (Matter of Weinrott [Carp], 32 NY2d 190; Matter of National Equip. Rental [American Pecco Corp.] 28 NY2d 639; Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621). When arbitration is invoked the only questions to be resolved by the courts (unless the dispute is barred by the Statute of Limitations) are whether "a valid agreement was made” and whether such agreement was "complied with” (CPLR 7503). Furthermore, the CPLR admonishes that "the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute” (CPLR 7501). (See Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Amer., 37 NY2d 91.) We find no merit to the first argument made by petitioner that the arbitration clause is invalid, as a matter of law, because the employment agreement does not satisfy the requirements of section 3-105 (subd 2, par d) of the General Obligations Law. It is recognized, of course, that the option provision precluded Surrogate’s Court approval under the three-year limitation imposed by section 3-105 (subd 2, par d) of the General Obligations Law. But it does not follow that this renders the agreement, including the arbitration clause, unreasonable as a matter of law. The statute of course simply provides that "No contract shall be approved if its term, including any extensions thereof by option or otherwise, extends for a period of more than three years from the date of *575 approval of the contract”. (Emphasis added.) It does not state that such a contract shall be deemed unreasonable for the purposes of section 3-101 of the General Obligations Law. And there is nothing to indicate that the Legislature intended the statute to have this effect. On the contrary the obvious purpose and effect of section 3-105 was not to enlarge the right to disaffirm, but rather to completely eliminate the power to disaffirm under certain circumstances.
The Law Revision Commission report recommending the passage of section 3-105 indicates that a major reason for its enactment was to provide a degree of certainty for parties contracting with infants in the entertainment industry so that the validity of such contracts would not be rendered doubtful or subject to subsequent litigation concerning reasonableness, after a considerable expenditure of effort in part or full performance of the contract. After noting that "[t]he right of disaffirmance may also operate * * * to discourage others from contracting with him [the infant] and thus bar him from contracts that are to his advantage”, the report continued further to discuss the inadequacy of section 3-101 and the necessity for further legislation by stating: "This section [General Obligations Law, § 3-101, formerly Debtor and Creditor Law, § 260], however, provides no protection where the infant is under the age of 18 years, and in cases of infants over the age of 18 years it provides no procedure by which prospective employers of the infant, or persons contracting to render services to him, can obtain assurance of a binding contract before expenditures are made in reliance on the contract.” (1961 Report of NY Law Rev Comm, p 253.)
Section 3-105 was enacted to fill this need. But the statute also provides an additional measure of protection for infants in exchange for the loss of the right to disaffirm. The infant cannot be bound for more than three years. In discussing the purpose and function of the three-year limitation on the duration of contracts, upon which petitioner predicates the invalidity of the agreement here, the report states that the restriction "limits the period for which the contract is made binding to a period in which the infant’s development and his future needs and capabilities are reasonably foreseeable” (1961 Report of NY Law Rev Comm, pp 256-257).
The statutory scheme is clear. If the conditions set forth in section 3-105 are satisfied, and the contract is approved, the right to disaffirm is extinguished. But the adult party must *576 pay a price in order to obtain this guarantee against disaffirmance. The duration of the contract must be limited to three years. If it is to run for a longer period it cannot be approved and the right to disaffirm is left intact. That is the risk the adult party runs by insisting on a longer period. Thus the fact that the contract could not be, or was not approved under section 3-105 does not render it unreasonable as a matter of law. The duration, together with the other provisions, is relevant in determining the reasonableness of the contract. It is not necessarily conclusive. In other words, although section 3-105 was available to the parties here, the failure or inability to obtain approval from the Surrogate’s Court pursuant to section 3-105 of the General Obligations Law, did not render the contract null and void when made; rather, the determination of its validity was merely postponed until attempted disaffirmance at which time the provisions of section 3-101 of the General Obligations Law came into play.
Petitioner urges that this State’s public policy compels the submission of the total issue of disaffirmance to the courts. We do not agree. In lowering the age of majority to 18 years of age (General Obligations Law, § 1-202) the Legislature has indicated with significant clarity that protection of individuals over 18 years of age was not a "major State” policy (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 629, supra). Section 3-101 of the General Obligations Law continues a measure of protection previously afforded those individuals between 18 and 21 years of age who entered into contracts in connection with a business in which they were engaged prior to the effective date of section 1-202 of the General Obligations Law. Since petitioner was 19 years of age when he signed the contract, the public policy protecting minors is really not, and cannot be, the issue here. Rather, the only issue is the reasonableness and providence of the contract pursuant to section 3-101 of the General Obligations Law (cf. Hirsch v Hirsch, 37 NY2d 312; Matter of Weinrott [Carp], 32 NY2d 190, supra; Matter of National Equip. Rental [American Pecco Corp] 28 NY2d 639, supra). Time, "that subtle thief of youth”, and the Legislature have deprived petitioner of the benefits of the claimed public policy of this State.
In short we see no reason to depart from the general rule announced in Weinrott that the court’s sole function is to determine the validity of the arbitration clause (CPLR 7503; Matter of Weinrott [Carp], 32 NY2d 190, supra; Matter of *577 Nationwide Gen. Ins. Corp. v Investors Ins. Co. of Amer., 37 NY2d 91, supra).
The final question, then, is whether the courts below were correct in holding that the arbitration clause was valid. The "valid agreement” referred to in CPLR 7503 concerns a valid agreement to arbitrate (Matter of Weinrott [Carp], 32 NY2d 190, 198, supra). Thus even when it is alleged, as it is in this case, that the contract itself is invalid in its entirety, the court’s role is still confined to determining the validity of the arbitration clause alone. If the arbitration agreement is valid, any controversy as to the validity of the contract as a whole passes to the arbitrators. In this case the courts below were correct in holding the arbitration clause valid. If the clause were unreasonable in nature, or had the mark of one wrongfully imposed upon an infant, its validity would be subject to question. However, again considering the age of petitioner, as well as the fact that this clause is standard, reasonable, and in common use between performers and their agents, the courts below properly concluded that it was valid and enforceable. Indeed, petitioner does not claim that the arbitration provision itself is unreasonable and there are no allegations that the arbitration agreement was procured by fraud, misrepresentation or overreaching.
Accordingly, the order of the Appellate Division should be affirmed.