**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0279-19T1

TANSUKH SURATWALA,
NEHA SURATWALA, TRUPTI
T. SURATWALA FAMILY
TRUST, and SURATWALA
SPOUSAL ACCESS TRUST,

     Plaintiffs-Appellants,

v.

SAILESH GANDHI, SHASIN
GANDHI, AUM SIDHDHY VINAYAK
HOSPITALITY LLC, AUM SIDHDHY
VINAYAK LLC, EMMONS
HOSPITALITY MANAGEMENT
LLC, SAV LLC, and SHREE
BADRINATH LLC,

     Defendants-Respondents.

_____

        Argued telephonically March 24, 2020 –
        Decided May 8, 2020

        Before Judges Yannotti and Currier.

        On appeal from the Superior Court of New Jersey,
        Chancery Division, Bergen County, Docket No. C-
        000093-19.

Justin D. Santagata argued the cause for appellants (Kaufman Semeraro & Leibman LLP, attorneys; Justin D. Santagata, on the briefs).

Andrew B. Zinman (Robinson Brog Leinwand Greene Genovese & Gluck, PC) of the New York Bar, admitted pro hac vice, argued the cause for respondents (Robinson Brog Leinwand Greene Genovese & Gluck, PC, attorneys; Matthew Cono Capozzoli and Andrew B. Zinman, on the brief).

PER CURIAM

Plaintiffs appeal from an order of the Chancery Division dated August 26, 2019, which dismissed their complaint without prejudice and required that they arbitrate their disputes with defendants Sailesh Gandhi (Sailesh), Aum Sidhdhy Vinayak LLC (Vinayak), Aum Sidhdhy Vinayak Hospitality LLC (Vinayak Hospitality), Emmons Hospitality LLC (Emmons Hospitality), and Emmons Hospitality Management LLC (Emmons Hospitality Management).[1]  For the reasons that follow, we reverse the trial court's order compelling arbitration and remand for a plenary hearing.

I.

In April 2019, plaintiffs Tansukh Suratwala (Tansukh), Neha Suratwala (Neha), Trupti Suratwala (Trupti), Tansukh Suratwala Spousal Access Trust

---

[1] For ease of reference, we refer to the individuals involved in this matter by their first names.

(Access Trust), and Trupti T. Suratwala Family Trust (Family Trust) filed their complaint in the Chancery Division. They named Sailesh, Shashin Gandhi (Shashin), Vinayak, Vinayak Hospitality, Emmons Hospitality, Emmons Hospitality Management, Sav LLC (Sav), and Shree Badrinath LLC (Shree) as defendants. In the complaint, plaintiffs also identify Stacy Gandhi as a defendant, but her name does not appear in the caption.

Plaintiffs allege Tansukh and Trupti established the Access Trust and the Family Trust. Trupti is the administrator of the Family Trust. According to the complaint, all of the defendant companies were formed under the New York Limited Liability Company Law (New York's LLC Law), N.Y.L.L.C.L. §§ 101 to 1403. Sailesh is the manager of the defendant companies.

Plaintiffs allege Neha and the Family Trust each have a ten percent interest in Emmons Hospitality and Emmons Hospitality Management. Emmons Hospitality and Emmons Hospitality Management own or manage a motel and rental units in Brooklyn, New York.

In addition, Neha has a 10.08 percent interest in Vinayak Hospitality, and the Family Trust has a 10.09 percent interest in the company. Vinayak Hospitality and Vinayak Hospitality Management own and operate a motel in South Ozone Park, New York.

3

Plaintiffs further allege Neha and the Access Trust both have a ten percent interest in Sav, a company that owns and operates multi-family properties and parking lots in Brooklyn. Plaintiffs also allege that the Access Trust actually has a twenty percent interest in the company. Shree owns and operates a motel in Brooklyn.

Plaintiffs claim that in certain years Sailesh, Shashin or Stacy made distributions to members of Vinayak Hospitality, Sav, Emmons Hospitality, and Shree and that either Neha, the Family Trust, or the Access Trust received no distributions or less than they should have received.

Plaintiffs asserted claims for distributions allegedly due under New York's LLC Law, conversion, unjust enrichment, and breach of fiduciary duties. They also asserted claims under the federal Racketeer Influenced and Corrupt Organizations Act (federal RICO), 18 U.S.C. §§ 1961 to 1968, and New Jersey's Racketeer Influenced and Corrupt Organizations Act (NJRICO), N.J.S.A. 2C:41-1 to -6.2. Plaintiffs sought, among other relief, dissolution of the defendant companies, compensatory damages, treble damages, and attorney's fees.

In June 2019, defendants filed a motion to compel arbitration and to consolidate the arbitrations. In support of their motion, defendants relied upon

4

arbitration clauses in the operating agreements for Vinayak, Vinayak Hospitality, Emmons Hospitality, and Emmons Hospitality Management. Each operating agreement requires arbitration of "[a]ny dispute, claim or controversy arising out of" the agreement.

The operating agreements for Vinayak, Vinayak Hospitality, and Emmons Hospitality also state that they "shall be governed by and construed in accordance with the substantive and procedural laws of the State of New York." However, the operating agreement for Emmons Hospitality Management states that it "shall be governed by and construed in accordance with the substantive and procedural laws of the State of New Jersey."

Plaintiffs opposed the motion. They argued defendants could not compel arbitration of the claims regarding Sav and Shree because defendants did not provide the court with the operating agreements for these entities. They also argued the NJRICO claims are not subject to arbitration.

In addition, plaintiffs argued that the court should not consider the operating agreements for the other companies because they were provided as exhibits to a certification by defendants' attorney. Plaintiffs asserted that defendants' counsel could not certify as to their authenticity.

 A-0279-19T1

Moreover, plaintiffs argued that a manager of a limited liability company cannot bind the other members to an operating agreement, and the court must conduct a plenary hearing to determine if they are bound by the agreements. They claimed there is evidence of forgery on the signature pages of the Emmons Hospitality and Emmons Hospitality Management operating agreements.

Plaintiffs submitted a certification signed by Tansukh, Neha, and Trupti. They state that defendant's counsel could not possibly have personal knowledge of the signature pages on the operating agreements attached to his certification. They state that:

> For over [forty] years, our family has been in business with four other families managing various motels and hotels. One of these four families is the family of Sailesh Gandhi. Over the past [forty] years, these five families have established no less than [twenty] entities to own and operate these various motels and hotels. These five families have signed many documents and operating agreements related to such entities. We have reviewed the "operating agreements" attached as Exhibits A through D to [d]efendants' counsel's certification. We did not sign those "operating agreements." It is entirely possible that the signature pages from those "operating agreements" are borrowed from other documents and operating agreements that we did, in fact, sign. We did not sign the "operating agreements" submitted by [d]efendants for [Emmons Hospitality] or [Emmons Hospitality Management], but the signature pages on those "operating agreements" prove our point. The signature pages are identical,

A-0279-19T1

despite that the "operating agreements" were purportedly executed [ten] years apart.

In response, Sailesh submitted a certification in which he states that, to the best of his recollection, the four operating agreements provided to the court "are true and correct operating agreement[s] for those entities." Sailesh states that his family executed the amended operating agreement for Vinayak Hospitality and other operating agreements.

He states the agreements were then "dropped off" at the offices of plaintiffs' attorney for signature by plaintiffs and other members. Sailesh asserts that plaintiffs and other members executed the agreements. He added that the operating agreement for Emmons Hospitality also had been executed by all members, including plaintiffs. Sailesh attached to his certification a copy of the First Amendment to the Amended and Restated Operating Agreement of Vinayak Hospitality.

The motion judge heard oral argument and thereafter entered an order dated August 26, 2019, which denied the motion to compel arbitration of the claims regarding Sav and Shree but granted the motion to compel arbitration of the claims regarding Sailesh, Vinayak, Vinayak Hospitality, Emmons Hospitality, and Emmons Hospitality Management. The judge also denied the motion to consolidate the arbitration proceedings.

A-0279-19T1

The judge provided a statement of reasons for his order. The judge stated that the court could not compel arbitration of the claims regarding Sav and Shree because defendants had not presented the court with the operating agreements for these entities. The judge stated, however, that plaintiffs must arbitrate the claims regarding Sailesh, Vinayak, Vinayak Hospitality, Emmons Hospitality, and Emmons Hospitality Management.

The judge noted that Sailesh had certified that the operating agreements for Vinayak, Vinayak Hospitality, Emmons, and Emmons Hospitality were "true and correct" and each agreement contains a provision requiring arbitration of any claims arising out of the agreement. The judge also found that plaintiffs' NJRICO claims are subject to arbitration.

The judge determined that any further issues regarding arbitrability of the claims, including the claims that the operating agreements were forged, should be determined in the first instance by the arbitrator. The judge also determined that consolidation of the arbitrations was a procedural matter that should be decided by the arbitrator. This appeal followed.

Plaintiffs appeal and argue: (1) the trial court erroneously applied New Jersey law; (2) under New York law, forgery or lack of authority for an arbitration clause must be determined by a court, not an arbitrator; and (3) they

8

proffered sufficient evidence for a plenary hearing on whether the operating agreements are real and executed by a sufficient number of members.

## II.

We turn first to plaintiffs' contention that the motion judge erred by applying New Jersey law in determining whether they are required to arbitrate their claims arising under the operating agreements for Vinayak, Vinayak Hospitality, Emmons Hospitality, and Emmons Hospitality Management. Plaintiffs argue that New York law governs the interpretation and application of the operating agreements for these companies.

"Choice-of-law determinations present legal questions, which are subjected to de novo review." Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., L.L.C., 450 N.J. Super. 1, 33 (App. Div. 2017) (citing Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 418 (App. Div. 2011); Arias v. Figueroa, 395 N.J. Super. 623, 627 (App. Div. 2007)). In addressing these issues on appeal, we owe no special deference to the trial court's interpretation or application of the law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice

if it does not violate New Jersey's public policy." Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341 (1992) (citing Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 671-72 (App. Div. 1986); Kalman Floor Co. v. Jos. L. Muscarelle, Inc., 196 N.J. Super. 16, 21-22 (App. Div. 1984)). We will apply the law of the state that the parties have chosen unless:

> (a) the chosen state has no substantial relationship to the parties to the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> [Id. at 341-42 (quoting Restatement (Second) of Conflicts of Laws § 187 (1969)).]

As we stated previously, the operating agreements for Vinayak, Vinayak Hospitality, and Emmons Hospitality each state that they "shall be governed by and construed in accordance with the substantive and procedural laws of the State of New York." The operating agreement for Emmons Hospitality Management states, however, that the agreement "shall be governed and

construed in accordance with the substantive and procedural laws of the State of New Jersey."

The record shows that all four entities were formed in New York, pursuant to New York's LLC Law. Each company has a principal office in New York, and apparently conducts business solely in New York. Although the operating agreement for Emmons Hospitality Management states that seven of the eleven members of the company have New Jersey addresses, there is no evidence showing that the company has a substantial relationship to New Jersey or that the parties' choice of New Jersey law was reasonable.

We therefore conclude that the court must apply New York law in addressing the question of whether plaintiffs are required to arbitrate claims arising from the Vinayak, Vinayak Hospitality, Emmons Hospitality, and Emmons Hospitality Management operating agreements.

III.

Plaintiffs argue that under New York law, the court, not an arbitrator, must determine whether they are bound by the operating agreements for the four subject companies. Plaintiffs recognized that the operating agreements for the companies include arbitration clauses, but they contend they are not bound by

11

the arbitration clauses. They claim they did not execute the agreements provided to the trial court and the agreements are forged.

New York's arbitration statute provides that "[a] party aggrieved by the failure of another to arbitrate may apply" to the court "for an order compelling arbitration." N.Y.C.P.L.R. 7503(a). Unless there is a "substantial question" as to whether the parties made or failed to comply with "a valid agreement" and arbitration of the claim is not otherwise barred, "the court shall direct the parties to arbitrate." Ibid.

Where "any such [substantial] question" has been raised, the court shall try the matter "forthwith." Ibid. Here, plaintiffs contend they have raised a "substantial question" as to the validity of the agreements, which must be resolved by the court, not an arbitrator. We agree.

In Weinrott v. Carp, 32 N.Y.2d 190, 192-93 (1973), the parties entered into an agreement which included an arbitration clause. One of the parties sought to stay the arbitration proceedings on the ground that the contract was induced by fraud. Id. at 192. The Court of Appeals affirmed the denial of the stay and the parties proceeded to arbitration. Id. at 192-93. The Court later held, consistent with Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395 (1967), that "[a]s a general rule . . . under a broad arbitration

provision the claim of fraud in the inducement should be determined by arbitrators." Id. at 198-99.

Weinrott does not, however, apply in this case because plaintiffs are not alleging they were fraudulently induced to enter into the operating agreements. They are alleging "fraud in the factum," which is "an attack upon the very existence of a contract from its beginning, in effect alleging that there was no legal contract" and that the instrument is "void ab initio." Mix v. Neff, 99 A.D.2d 180, 182 (N.Y. App. Div. 1984) (citations omitted). A claim of fraud in the factum differs from fraud in the inducement because if the latter is proven, the contract is voidable. Id. at 182-83.

Such a claim is a "substantial issue" under N.Y.C.P.L.R. 7503(a), which must be resolved by the court. See Housekeeper v. Lourie, 39 A.D.2d 280, 285 (N.Y. App. Div. 1972); DeSantis v. Empire State Coin-Op Distribs., Inc., 174 A.D.2d 1043, 1043 (N.Y. App. Div. 1991). Therefore, the court must conduct a plenary hearing to determine if the parties entered into a valid agreement, which includes an arbitration clause. See Housekeeper, 39 A.D.2d at 285; DeSantis, 174 A.D.2d at 1043; Howe Assocs. v. Comstock, Inc., 199 A.D.2d 55, 55-56 (N.Y. App. Div. 1993).

13

Our conclusion is supported by O'Neill v. Krebs Communications Corp., 16 A.D.3d 144, 144 (N.Y. App. Div. 2005).  In that case, the plaintiff claimed that a forgery took place and the agreement was altered after it was signed, thereby voiding the entire agreement including the arbitration clause.  Ibid.  The court noted that under New York and federal law, a court must "treat an agreement containing an arbitration clause as if there were two separate agreements – the substantive agreement between the parties, and the agreement to arbitrate."  Ibid. (citing Weinrott, 32 N.Y.2d at 198-99; Prima Paint Corp., 388 U.S. at 409).

New York's Appellate Division stated, however, that the plaintiff had alleged fraud "but . . . not the type that permeates the entire agreement so as to invalidate the arbitration clause as well."  Id. at 144-45 (citation omitted).  The appellate court held that the trial court "properly found that the parties entered into a valid agreement to arbitrate any disputes arising out of their agreement."  Id. at 145.  The trial court "properly ended its inquiry there, and referred all issues concerning the alleged alteration of the contract after it was signed and the authenticity of the submitted contract, upon which [the defendant] bases its claim, to the arbitrator to resolve."  Ibid. (citations omitted).

A-0279-19T1

Here, plaintiffs claim they never executed the operating agreements for Vinayak, Vinayak Hospitality, Emmons Hospitality, and Emmons Hospitality Management that were presented to the trial court. They claim the agreements are forged. Their allegation "permeates the entire agreement" and raises a question as to whether they entered into a "valid agreement" to arbitrate. Id. at 144-45. Under New York law, that issue must be resolved by the court, not an arbitrator.

Our conclusion is also supported by decisions applying the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16. In Prima Paint, the Supreme Court held that the federal courts may adjudicate a claim that a party was fraudulently induced to enter into an arbitration agreement, but the courts should not consider a claim of fraud in the inducement of the contract generally. 388 U.S. at 403-04. Under Prima Paint, the arbitration clause is viewed as an agreement separate and apart from the contract in which it is found.

However, the Prima Paint principle does not apply where a party alleges "fraud in the factum." Kyung In Lee v. Pacific Bullion, Inc., 788 F. Supp. 155, 157 (E.D.N.Y. 1992). The court explained:

> In raising a claim of fraudulent inducement of contract, a party must argue that its knowing assent to the terms of the contract followed from a false promise by the other side. Thus, unless the specific arbitration

provision _itself_ was obtained via a false promise, the signatory has fairly agreed to submit disputes to arbitration. By contrast, where fraud in the factum of the entire contract is alleged, it makes no sense to apply Prima Paint's requirement of a specific attack on the making of the arbitration clause itself. If no agreement ever arose between the parties, there can be no severable agreement to arbitrate. Similarly, if a party's signature w[as] forged on a contract, it would be absurd to require arbitration if the party attacking the contact as void failed to allege that the arbitration clause itself was fraudulently obtained.

[Ibid.]

Other courts have similarly concluded that a bona fide claim of fraud in the factum as to the entire contract renders the Prima Paint principle inapplicable. See Cancanon v. Smith Barney, Harris, Upham & Co., 805 F.2d 998, 1000-01 (11th Cir. 1986) (holding that where plaintiffs made out a clear case of fraud in the factum, the defendant was not entitled to entry of an order referring the matter to arbitration); Solymar Invs., Ltd. v. Banco Santander, S.A., 672 F.3d 981, 995-96 (11th Cir. 2012) (distinguishing claims of fraud in the factum from fraud in the inducement and holding that a claim of fraud in the inducement should be referred to arbitration); Nuclear Elec. Ins. v. Central Power & Light Co., 926 F. Supp. 428, 434 (S.D.N.Y. 1996) (finding that where a party claims it never assented to a contract containing an arbitration clause due

to fraud, that party.s claim must first be evaluated by a court before the dispute can referred to arbitration).

IV.

Plaintiffs further argue they presented sufficient facts to support their claim that they did not execute the operating agreements provided to the trial court and that the agreements are forged. Plaintiffs contend they presented sufficient evidence to warrant a plenary hearing on this issue. Again, we agree.

Here, defendants presented the subject operating agreements to the trial court and claimed plaintiffs were bound by the arbitration clauses in those agreements. The agreement for Vinayak states that the parties executed the agreement. Appended to the agreement is a separate page, which includes signatures of the members, including Trupti and Neha.

The Vinayak Hospitality agreement is signed by Sailesh, as managing member. It states that the parties, which include Trupti and Neha, have executed the agreement. Defendants did not provide a copy of the signatures of the parties who executed the agreement.

Defendants also provided the trial court with the Amended and Restated Operating Agreement for Emmons Hospitality. That document includes a page with signatures of the company's members, which include Trupti and Neha.

A-0279-19T1

However, in their certification, Tansukh, Neha, and Trupti state without qualification that they did not sign the agreements defendants submitted to the court. They suggest the signature pages appended to the agreements may have been "borrowed" from other documents and operating agreements. Tansukh, Neha, and Trupti also point out that the signature pages for the Emmons Hospitality and Emmons Hospitality Management operating agreements are the same, even though these agreements were executed ten years apart.

As stated previously, in his certification, Sailesh asserts the agreements provided to the court are "true and correct" operating agreements for the companies. He states that in 2011, the members of "various entities" decided to amend the operating agreements for companies that he or Tansukh managed. He states his family members executed the amended operating agreement for Vinayak and other amended operating agreements.

Sailesh further states the agreements were "dropped off" at the offices of plaintiffs' attorney and they were to be signed by plaintiffs and other members of the companies. Sailesh also states that the operating agreement for Emmons Hospitality was executed by all members, including plaintiffs.

In addition, Sailesh provided the court with a copy of the First Amendment to [the] Amended and Restated Operating Agreement for Vinayak Hospitality,

which states that "[i]n all other respects, the [o]perating [a]greement shall remain in full force and effect without change or modification." Signatures for Trupti, Tansukh, and Neha appear on this document, as trustees for the Family Trust.

We are convinced that the documents at issue, and the competing certifications, raise genuine issues of material fact as to whether plaintiffs executed the operating agreements with the arbitration clauses that defendants seek to enforce. Accordingly, we remand the matter to the trial court for a plenary hearing to determine whether plaintiffs executed and are bound by the subject agreements. The trial court may, in its discretion, allow the parties the opportunity for discovery on the issues to be addressed at the hearing.

V.

Plaintiffs contend the trial court erred by finding that the claims they asserted under NJRICO are subject to arbitration. We are convinced that, in the event the trial court finds that plaintiffs are bound by the subject agreements and are required to arbitrate their claims against Sailesh, Vinayak, Vinayak Hospitality, Emmons Hospitality, and Emmons Hospitality Management, the court may order plaintiffs to arbitrate their claims under NJRICO.

19                                                                      A-0279-19T1

In Caruso v. Ravenswood Developers, Inc., 337 N.J. Super. 499, 501 (App. Div. 2001), we held that the trial court correctly found that NJRICO claims were subject to arbitration. There, the parties entered into an agreement for the construction of a home. Ibid. The contract provided that "[a]ny dispute arising in connection" with the agreement, or any amendment to the agreement, would be "heard and determined by arbitration . . . ." Id. at 502.

We held that the plaintiffs' claims under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210, and NJRICO were arbitrable. Id. at 505. We noted that the plaintiffs relied upon the same facts in support for their breach of contract, consumer fraud, and NJRICO claims. Id. at 508. We stated:

> Although plaintiffs couch the claims in the relevant statutory language, it is apparent that the claims are subsumed in the subject matter of the arbitration agreement between the parties. Furthermore, plaintiffs . . . exercise[d] their right to limit the scope of the arbitration agreement when they insisted upon the language that the arbitration would not preclude pursuit of specific performance in [s]uperior [c]ourt. This is highly suggestive that the parties understood that all disputes concerning the performance of the contract by both parties would be resolved through arbitration.
>
> [Ibid.]

Plaintiffs argue, however, that under New York law, a party may not waive access to the courts for a statutory claim unless the waiver is "clear,

explicit, and unequivocal . . . ." Crespo v. 160 W. End Ave. Owners Corp., 253 A.D.2d 28, 32-33 (N.Y. App. Div. 1999) (quoting Waldron v. Goddess, 61 N.Y.2d 181, 183 (1984)). Plaintiffs contend a provision requiring arbitration of claims "arising out of" an agreement is insufficient to encompass statutory claims. However, Crespo does not support that contention.

In Crespo, the plaintiff asserted a claim under New York law, alleging he had been unlawfully terminated from his position on the basis of his age. Id. at 29. A collective bargaining agreement required arbitration of "all differences arising between the parties . . . as to the interpretation, application or performance of any part of th[e] agreement . . . ." Ibid.

The court held that a statutory claim was not a "difference" between the parties concerning the interpretation, application or performance of the agreement. Id. at 32-33. The court found that because the arbitration clause's application to statutory claims was not sufficiently clear, the plaintiff was not required to arbitrate his age-discrimination claim. Id. at 33-34.

The arbitration clauses at issue in this case are, however, sufficiently clear to require arbitration of the NJRICO claims. As noted, the clauses require arbitration of "[a]ny dispute, claim or controversy arising out of" the respective agreements. Plaintiffs' NJRICO claims are based upon the same facts as the

claims for distributions that were wrongfully withheld and conversion. The arbitration clauses encompass plaintiffs' NJRICO claims.

In support of their argument, plaintiffs also rely upon Conde v. Yeshiva University, 16 A.D.3d 185 (N.Y. App. Div. 2005). However, in that case, the relevant arbitration clause provided for arbitration of "[a]ny dispute, difference, or controversy related to wages, hours and working conditions . . . ." Id. at 186 (emphasis added). The court thereafter held that the plaintiffs were not required to arbitrate their employment discrimination claims because the arbitration clause "lacked the necessary explicit incorporation of statutory antidiscrimination requirements to presume arbitrability . . . ." Ibid.

In this case, however, the subject arbitration clauses are broader than those at issue in Conde. The clauses each require arbitration of any "[a]ny dispute, claim or controversy arising out of" the respective agreements. There is no limitation, as there was in Conde, concerning matters "related to wages, hours and working conditions . . . ." Ibid.

Plaintiffs further argue that if New Jersey is deemed to have the dominant interest regarding arbitrability of claims asserted under NJRICO, and New Jersey law applies to this issue, the arbitration clause in the subject agreements is insufficient because it does not state that statutory claims shall be arbitrated.

In support of this contention, plaintiffs cite Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A., 168 N.J. 124 (2001), and Atalese v. United States Legal Services Group, L.P., 219 N.J. 430, 445 (2014). We disagree.

In Garfinkel, the plaintiff physician alleged he was unlawfully discharged in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42. Garfinkel, 168 N.J. at 127. The plaintiff's employment agreement required that, with the exception of post-employment restrictions and pension benefits, arbitration of "any controversy or claim, arising out of, or relating to" the agreement was required. Id. at 128.

The Court held that parties to an agreement may waive statutory remedies in favor of arbitration. Id. at 131 (citing Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 140 (1978)). However, the waiver of statutory rights "must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively." Id. at 132 (quoting Red Bank Reg'l Educ. Ass'n, 78 N.J. at 140).

The Court found the arbitration clause at issue was insufficient to constitute waiver of the plaintiff's remedies under the LAD. Id. at 134. The Court stated that the clause "suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some

23

other element of the contract itself." Ibid. In addition, the contract did not mention "statutory claims redressable by the LAD." Ibid.

Plaintiffs' reliance upon Garfinkel is misplaced. That case dealt with statutory remedies under the LAD. The Court pointed out that "the rights [the LAD] confers on aggrieved employees are essential to eradicating discrimination in the workplace." Id. at 135.

Thus, the Court refused "to assume that employees intended to waive those rights unless their agreements so provide in unambiguous terms." Ibid. Therefore, the agreement "should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." Ibid. This case does not involve claims under the LAD or a heightened concern regarding remedies designed to address and eradicate unlawful discrimination.

Plaintiffs' reliance upon Atalese also is misplaced. In that case, the plaintiff asserted claims under the CFA and the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. Atalese, 219 N.J. at 436. The plaintiff entered into a contract for debt-adjustment services, which stated that "any claim or dispute . . . related to th[e a]greement or related

to any performance of any services" shall be submitted to binding arbitration. Id. at 436-37.

"An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." Id. at 442 (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). The Court stated that "under New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Id. at 443 (alteration in original) (quoting Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)).

In Atalese, the Court expressed the concern that "an average member of the public may not know — without some explanatory comment — that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Id. at 442. The Court held that an arbitration clause, "in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Id. at 447. The Court noted, however, that "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444.

The Atalese Court found the arbitration agreement at issue was unenforceable because there was no "explanation that plaintiff [wa]s waiving her right to seek relief in court for a breach of her statutory rights." Id. at 446.

A-0279-19T1

The Court noted that the clause stated the parties would submit their disputes to arbitration, but "[t]he provision d[id] not explain what arbitration [wa]s, nor d[id] it indicate how arbitration is different from a proceeding in a court of law." Ibid. The Court added that the clause was not written in plain language. Ibid.

Thus, under Atalese, there must be mutual assent by the parties to submit their dispute to arbitration. Id. at 442. Since arbitration involves the waiver of the right to pursue the claims in court, the arbitration clause must show that the party waiving the right did so clearly and unambiguously. Id. at 443.

As previously stated, "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444. However, "the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Id. at 447.

Unlike Atalese, this case does not involve claims by the average member of the public, who may not understand that arbitration is a substitute for proceedings in court. Rather, this case involves claims by persons who apparently have considerable involvement in business and would understand the concept of arbitration and the waiver of the right to pursue statutory claims in court.

A-0279-19T1

As the record shows, the parties are engaged in the ownership and operation of motels, hotels and other properties. In his certification, Sailesh states the parties have engaged in business for over forty years and have established no less than twenty companies to own and operate their properties.

Moreover, the meaning of the subject arbitration clauses is readily apparent from the plain language of the clauses, which encompasses all claims that arise from or relate to the subject operating agreements. Here, as in <u>Caruso</u>, the claims under NJRICO are based upon the same facts and arise from the operating agreements. The clauses clearly and unambiguously require arbitration of all claims arising from and related to the subject agreements.

We therefore conclude that if the trial court finds that plaintiffs executed the operating agreements for Vinayak, Vinayak Hospitality, Emmons Hospitality, and Emmons Hospitality Management and finds that the arbitration clauses in these agreements are enforceable, the court should order plaintiffs to arbitrate the claims in the complaint regarding these companies, including the claims asserted under NJRICO. The language of the subject arbitration agreements is sufficiently clear to include all claims arising under the agreements, including statutory claims like those under NJRICO.

A-0279-19T1

Reversed and remanded to the trial court for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION