OPINION OF THE COURT
Herman Cahn, J.
This motion compels an examination of the relationship between the United States Arbitration Act (9 USC § 1 et seq.), and the arbitration article of the CPLR, article 75. By virtue of recent United States Supreme Court decisions, the substantive provisions of the Federal statute apply in State court and preempt New York law which would withdraw the power to enforce arbitration agreements.
Plaintiff moves by order to show cause for a stay of arbitration pursuant to CPLR 7503 (b). The stay is sought on the ground that the agreement pursuant to which arbitration was commenced is a nullity due to its fraudulent inducement, and that the claims and issues in the arbitration are intertwined with broader, nonarbitrable issues in the instant action.
Plaintiff, Dolomite, S.p.A. (Dolomite), located in Italy is engaged in the manufacture and distribution of ski boots and *858 other ski related products. Defendants James L. Woolner and Karl E. Wallach (Woolner and Wallach) are the principal stockholders, officers and directors of defendant Beconta, Inc. (Beconta), which is engaged in the importation and distribution of ski products in the United States.
Dolomite and Beconta, by agreement dated November 30, 1978, entered into a joint venture, forming Beconta Manufacturing Corp., later called BD Manufacturing Corp. (BD) for the manufacture, importation into this country, and sale of Dolomite ski boots. The joint venture was managed by Woolner and Wallach.
Dolomite claims that in March 1983 it discovered that Woolner and Wallach had stolen $358,984 from BD. Dolomite instituted Federal court proceedings against them based on claims of theft, fraud, waste, etc. Among the relief which Dolomite sought was an attachment of BD’s accounts receivable. The defendants allegedly represented to the court, at a hearing, that BD had over $1,800,000 in assets and that the accounts receivable would be collected by a neutral collection agency and held in escrow. Subsequent negotiations resulted in Dolomite discontinuing the court actions including the one for attachment and entering into an agreement with Beconta.
The agreement provided in part that Dolomite would arbitrate its disputes relating to distribution of BD’s assets, that Dolomite would give general releases to the principals of Beconta and look exclusively to BD’s assets for satisfaction of the arbitration award, that Al Can Collection Services Co., Inc. (Al Can) (one of the defendants here) would serve as collector of the accounts receivable and that BD’s funds would be held in escrow pursuant to an agreement whereby all disbursements would be made only upon joint signature of Beconta and Dolomite. Dolomite claims that after signing the agreement, it became aware that the representations made by defendants in the course of the negotiations and in the agreement itself, which representations had induced Dolomite to enter the agreement, were fraudulent. Further, it claims to have learned that Al Can and Mario Del Conte had violated that part of the agreement relating to the collection and escrow arrangements. Dolomite then instituted this action seeking to rescind the arbitration agreement. It now moves for a stay of arbitration pending the outcome of this action.
The United States Arbitration Act (9 USC § 1 et seq.) has preempted New York law on the subject, and controls here *859 since the contract evidences a transaction involving interstate commerce (as well as international commerce). (9 USC § 2; Matter of Rederi [Dow Chem. Co.], 25 NY2d 576; Prima Paint v Flood & Conklin, 388 US 395; Southland Corp. v Keating, 465 US 1, 104 S Ct 852.) The United States Supreme Court recently held, in Southland Corp. v Keating (supra), that the Federal Arbitration Act preempts any State law which withdraws the power to enforce arbitration agreements. Substantive rules of the United States Arbitration Act apply in both Federal and State courts (Southland Corp. v Keating, supra). Once a dispute is covered by the act, it applies to all questions of validity and enforceability, such as that now before the court. (Shearson Hayden Stone v Liang, 493 F Supp 104.)
On the question of who, as between the arbitrator and the court adjudicates issues of fraudulent inducement, Federal law holds that if the fraud is alleged to have induced the arbitration clause itself, as opposed to having induced the over-all agreement within which the arbitration clause is contained, the issue is to be decided by the court. (Prima Paint v Flood & Conklin, supra; Lawrence Co. v Devonshire Fabrics, 271 F2d 402.) New York law accords with Federal law in this regard. (Matter of Silverman [Benmor Coats], 61 NY2d 299.) However, the law in New York goes further, holding that if the alleged fraud permeates the entire contract, including the arbitration provision, that provision will be no more enforceable than the rest of the contract and the whole contract’s validity becomes a question for the court. (Matter of Weinrott [Carp], 32 NY2d 190, 197; Housekeeper v Lourie, 39 AD2d 280.) Thus, since on this issue Federal and State law differs, Federal law preempts New York’s law. Because the Federal act is the applicable one, we need not decide whether movant has raised a substantial issue of the alleged fraud permeating the entire contract, as that is not a reason recognized under Federal law for removing the issue from arbitration, and leaving it to the court.
Plaintiff’s position is that the entire agreement was induced by fraud and that the agreement revolves completely around the arbitration provisions; i.e., that those provisions are the core and essence of the agreement. (He also contends that fraud permeates the entire agreement but as discussed above, the issue will not be addressed.) Therefore, the agreement must be analyzed to determine the validity of plaintiff’s contention, that arbitration is the essence of the agreement.
The agreement sets up the arrangements for a liquidation of the joint venture, BD. Paragraph 3 thereof provides for the *860 proceeds of the liquidation to be divided pursuant to a final accounting made by a neutral accountant to be "selected by mutual agreement of the parties or, if they cannot agree within 15 days after the execution of this Agreement, then by the American Arbitration Association before which the accounting shall in that last event, proceed and whose fees shall also be paid out of BD’s funds.” From those provisions and the rest of the agreement, it appears that the basic purpose of the agreement is to arrange for liquidation, with just one of the many provisions relating to arbitration. In fact, under paragraph 3, arbitration would not have been implicated had the parties agreed upon an accountant within 15 days of execution of the agreement. Therefore, plaintiffs contention that the arbitration provision was at the very core of the agreement and hence was specifically induced by the alleged fraud is without merit.
The question of fraudulent inducement of the contract as a whole, is, as stated earlier, under both Federal and State law, one for the arbitrator and not the court. (Prima Paint v Flood & Conklin, supra; Matter of Silverman [Benmor Coats], supra.) Therefore, a stay is not warranted.
Even if plaintiff had made out a substantial claim of fraudulent inducement of the arbitration agreement, a stay is not in order. Although New York law is in principle in accord with Federal law regarding the forum in which questions of validity and enforceability are adjudicated, specific procedural rules of the CPLR as applied to the facts of this case would seem to lead to a result contrary to that which would be reached in Federal court. Dolomite’s motion for a stay is made "pursuant to * * * CPLR § 2214 (d) and 2201” (and pursuant to United States Arbitration Act § 4 [9 USC § 4]. Under CPLR 2201 the court is authorized to grant a stay of proceedings upon such terms as may be just. (CPLR 2214 [d] pertains to the order to show cause.) It would appear however, that CPLR 7503 (b) entitled "Application to compel or stay arbitration” is the rule most applicable here rather than the far more general CPLR 2201. CPLR 7503 (b) states, in part: "a party who has not participated in the arbitration and who has not made or been served with an application to compel arbitration, may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with”. Since plaintiff has participated in the arbitration in some ways there is considerable doubt as to whether plaintiff may avail itself of the CPLR 7503 (b) stay provision even if the *861 fraudulent inducement issue were one for the court. (Binghamton Civ. Serv. Forum v City of Binghamton, 44 NY2d 23, 29.)
Plaintiff’s contention that for purposes of judicial economy the arbitration should be stayed, because of the similarity and entwining of issues in the rescission action and the arbitration is meritless. Following such reasoning, a party’s contractual right to arbitration could be defeated merely by bringing a rescission action. This, of course, violates the very purpose of arbitration.
Plaintiff’s contention that defendants have acknowledged or acquiesced in rescission of the agreement is also without merit as is the challenge based upon the mutual mistake theory.
Insofar as rescission is sought on the basis of breaches of the agreement, that issue is to be addressed by the arbitrator, not the court.
The motion is denied.