■ UTICA MUTUAL INSURANCE COMPANY, Respondent, v GULF INSURANCE COMPANY, Appellant. [762 NYS2d 730] —Appeal from that part of an order of Supreme Court, Oneida County (Julian, J.), entered October 30, 2002, that denied defendant's motion to stay this action in favor of arbitration.

It is hereby ordered that the order insofar as appealed from be and the same hereby is unanimously reversed on the law without costs and defendant's motion is granted.

Memorandum: This action arises out of a reinsurance agreement (Agreement) executed in November 1997 by plaintiff, Utica Mutual Insurance Company (Utica), and defendant, Gulf Insurance Company (Gulf). According to the terms of the Agreement, Utica would reinsure Gulf for $5 million of its $6 million share on an underlying comprehensive crime policy that Gulf, as well as Lloyds of London syndicate members, issued to Credit Bancorp., Ltd. (Credit Bancorp), whose principal address was Curacao, Netherlands Antilles. The Agreement contained a broad arbitration clause, requiring the parties to arbitrate "[a]ny dispute arising out of or related in any way" to the Agreement or the transactions thereunder, whether such dispute "arises before or after termination" of the Agreement. The forum for any arbitration proceeding commenced under the Agreement was set forth as Hartford, Connecticut.

In late 1998 authorities suspected that Credit Bancorp was operating a fraudulent scheme and, ultimately, the Securities

and Exchange Commission brought an action in 1999 against Credit Bancorp and its principals in federal court (*Securities & Exch. Commn. v Credit Bancorp, Ltd.*, 147 F Supp 2d 238, [2001], *recons denied* 2001 WL 1135652 [SD NY, Sept. 26, 2001]). That action was settled in January 2002, as a result of which Gulf paid $6 million on its policy covering Credit Bancorp. Gulf immediately provided notice of the claim involving Credit Bancorp to Utica under the terms of the Agreement.

Utica disclaimed coverage and brought this action against Gulf seeking, inter alia, rescission of the Agreement. The gravamen of Utica's contention is that Gulf was aware of the fraudulent nature of Credit Bancorp's activities when it entered into the Agreement in November 1997, and thus such fraud permeated the entire agreement and rendered invalid all contractual provisions, including the arbitration provision.

Shortly thereafter, Gulf sent Utica a demand for arbitration, which Utica rejected. Gulf then filed an application to compel arbitration in Connecticut state court and moved to stay this action in favor of arbitration, arguing that the Agreement contains a clause providing for arbitration. Utica moved to stay the arbitration proceeding and vacate Gulf's demand for arbitration, and also moved for summary judgment. Supreme Court denied the three motions before it. The court determined that Utica presented a prima facie case of fraud that permeated the Agreement and ordered a hearing pursuant to CPLR 2218 to determine the validity of the Agreement.

Gulf contends that the court erred in failing to apply the Federal Arbitration Act (FAA) (9 USC § 1 *et seq.*), which preempts New York State law and requires arbitration of this dispute. In addition, Gulf contends that the court further erred in determining that Utica made a prima facie showing that fraud permeated the entire reinsurance agreement, including the arbitration provision. We agree, and thus conclude that the court should have granted Gulf's motion to stay this action in favor of arbitration.

The FAA, which establishes a strong policy in favor of arbitration, applies to any contract involving interstate commerce (*see* 9 USC § 2; *Matter of Smith Barney, Harris Upham & Co. v Luckie,* 85 NY2d 193, 200-201 [1995], *rearg denied* 85 NY2d 1033 [1995], *cert denied sub nom. Manhard v Merrill Lynch, Pierce, Fenner & Smith,* 516 US 811 [1995]). Because insurance transactions constitute commerce within the meaning of the Commerce Clause (*see United States v South-Eastern Underwriters Assn.*, 322 US 533, 553, [1944], *reh denied* 323 US 811 [1944]), it is beyond dispute that the Agreement at is-

sue is a contract involving interstate and, indeed, international commerce. The Agreement involves the reinsurance of a London-based insurance contract that covers a company located in Curacao and involves claims that could arise anywhere in the world.

The FAA preempts state law "only to the extent that the State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Smith Barney, Harris Upham & Co.*, 85 NY2d at 204 [internal quotation marks omitted]). Thus, the dispositive issue before us is whether application of New York arbitration law undermines the goals and policies of the FAA. We conclude that it does.

This Court has previously stated:

"It is well established under both CPLR 7503 and 9 USC § 4 that a party may resist enforcement of an agreement to arbitrate on any basis that could provide a defense to or grounds for the revocation of any contract, including fraud, unconscionability, duress, overreaching conduct, violation of public policy, or lack of contractual capacity * * *. Nonetheless, although the statutes use similar language concerning the making of an arbitration agreement and the duty of the court to try any issue of contractual validity, there appears to be some difference in the manner in which the statutes have been interpreted. * * *

"Under Federal law, if the challenge is aimed at the making of the contract as a whole, that challenge is for the arbitrator, not the court, to determine * * *. Conversely, where the challenge is to the making of the arbitration clause itself, or to its inclusion in the contract, the challenge is for the court to decide" (*Matter of Teleserve Sys. [MCI Telecom. Corp.]*, 230 AD2d 585, 592 [1997]).

As with federal law, a broad arbitration clause in New York is separable from the substantive provisions of an agreement and, even if there is fraud in the inducement of the substantive provisions, all issues, including the claim of fraud, are to be determined by the arbitrators (*see Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 308 [1984]; *Matter of Weinrott [Carp]*, 32 NY2d 190, 198 [1973]; *Oberlander v Fine Care*, 108 AD2d 798, 798-799 [1985]). Under New York law, however, the court not only "must decide the challenge where it is to the validity of the arbitration clause itself," which is consistent with federal law, but also "where the alleged illegality permeates the [agreement] as a whole" (*Teleserve Sys.*, 230 AD2d at 592; *see Weinrott*, 32 NY2d at 197; *see also Silverman*, 61 NY2d at 307-308; *Matter of Prinze [Jonas]*, 38 NY2d 570, 577 [1976]; *House-*

*keeper v Lourie*, 39 AD2d 280, 283-285 [1972], *appeal dismissed* 32 NY2d 832 [1973]; *Dolomite, S.p.A. v Beconta, Inc.*, 129 Misc 2d 857, 859 [1985]). Therefore, New York law not only differs from the FAA, but also constrains the broad purposes underlying the FAA—a liberal federal policy favoring arbitration (*see Moses H. Cone Mem. Hosp. v Mercury Constr. Corp.*, 460 US 1, 24-25 [1983])—by channeling cases raising the issue whether fraud permeates an agreement into court, rather than arbitration. Thus, the FAA preempts New York State law with respect to the issue before us.

We further conclude that the parties agreed to arbitrate this dispute and that the dispute at issue comes within the scope of the arbitration agreement (*see ACE Capital Re Overseas Ltd. v Central United Life Ins. Co.*, 307 F3d 24, 29-30 [2d Cir 2002]; *Hartford Acc. & Indem. Co. v Swiss Reins. Am. Corp.*, 246 F3d 219, 226-228 [2d Cir 2001]).

In any event, even under New York law, this dispute is arbitrable. It is well settled that, in order to demonstrate that fraud permeated an agreement, a party must show that the agreement was not "the result of 'arm's length negotiation' * * * or that the arbitration clause was inserted into the [agreement] in order to effect the fraudulent scheme" (*Information Sciences v Mohawk Data Science Corp.*, 56 AD2d 706, 706 [1977], *affd* 43 NY2d 918 [1978]). Here, Utica failed to make a prima facie showing that Gulf knew of Credit Bancorp's fraudulent nature when it entered into the Agreement in November 1997. Utica's "bare conclusory assertions are insufficient to demonstrate that 'the alleged fraud was part of a grand scheme that permeated the entire [agreement] including the arbitration provision'" (*Cologne Reins. Co. of Am. v Southern Underwriters,* 218 AD2d 680, 681 [1995], quoting *Weinrott*, 32 NY2d at 197). Thus, we reverse the order insofar as appealed from and grant Gulf's motion. Present—Pigott, Jr., P.J., Wisner, Scudder, Burns and Lawton, JJ.