■ In the Matter of ARC ELECTRICAL & MECHANICAL CONTRACTORS CORP., Petitioner, v INVENSYS BUILDING SYSTEMS INC., Formerly Known as SIEBE ENVIRONMENTAL CONTROLS, A DIVISION OF BARBER COLEMAN Co., Respondent, and AMERICAN INSURANCE COMPANY et al., Appellants. [770 NYS2d 299]—

Order and judgment (one paper), Supreme Court, New York County (Jacqueline Silbermann, J., upon decision of Harold Tompkins, J.), entered February 6, 2003, which, to the extent appealed from as limited by the briefs, denied the cross petitions of respondents WDF, Inc. and American Insurance Company to stay arbitration, unanimously reversed, on the law, with costs, the cross petitions granted and the arbitration stayed.

In March 1999, Thermo Dynamics, Inc. (Thermo) entered into a contract with the Dormitory Authority of the State of New York (the Authority) for certain construction work at the Kings County Hospital Project, New Patient Tower, in Brooklyn, New York. Respondent American Insurance Company (American) issued a performance bond which named Thermo as principal and the Authority as obligee and which guaranteed the completion of the project. Thermo then entered into a subcontract with respondent Invensys Building Systems Inc. (Invensys), after which Invensys entered into a subcontract

with petitioner Arc Electrical & Mechanical Contractors Corp. (Arc).

In May 2001, the Authority declared Thermo in default and, pursuant to the terms of the performance bond, demanded American complete the work. The Authority and American entered into an agreement in July 2001 providing for the completion of Thermo's work (the Takeover Agreement), and American and WDF, Inc. (WDF) thereafter entered into an agreement which provided that WDF would perform the work required of American under the Takeover Agreement (the Completion Agreement).

After work resumed, a dispute arose among Invensys, American and WDF, which, inter alia, concerned the failure of Invensys and Arc to complete certain electrical work. As a result, American incurred additional costs when WDF retained another electrical subcontractor to perform Arc's work. American, WDF and Invensys then entered into extensive negotiations during which Invensys requested arbitration of the disputed issues. WDF objected to the request, as there was no arbitration clause in any of the agreements. Invensys's counsel, by letter dated July 26, 2002, represented to WDF that Arc's counsel had agreed to arbitration and on September 23, 2002, American, WDF and Invensys entered into an agreement (the Settlement Agreement) which, inter alia, provided for the completion of the work. The Settlement Agreement also provided that American, WDF and Invensys would arbitrate certain disputes among themselves.

Paragraph 11 of the Settlement Agreement states, in pertinent part: "Invensys *shall be permitted to join [Arc]* as a party to the arbitration so as to be bound by the arbitrators' award as to the Fire Code and Electrical backcharges" (emphasis added).

Paragraph 13 of the Settlement Agreement further states: "The Subcontract is hereby modified to provide for the arbitration set forth in paragraph 11 aforesaid *and specifically to include in said arbitration by consolidation, joinder, or in any other manner, [Arc],* Invensys' electrical subcontractor as a party to the arbitration so as to be bound by the arbitrators' award as to the Fire Code and Electrical backcharges of $386,963.50" (emphasis added).

Invensys filed a demand for arbitration against American, WDF and Arc on or about October 1, 2002, in response to which Arc commenced the within proceeding on the grounds that it never agreed to arbitrate. WDF subsequently filed a cross petition to stay arbitration, asserting that Invensys had fraudulently induced WDF to enter into the Settlement Agreement by falsely

representing that Arc had, in fact, agreed to participate in arbitration. WDF maintained that it would not have consented to arbitration if it were aware Arc was not going to participate and, in support of its cross petition, submitted an affidavit from Arc's attorney, in which he stated that he never informed Invensys's counsel, or anyone else, that Arc consented to arbitration. American also cross-petitioned to stay arbitration to the extent that it was stayed against WDF.

The hearing court granted Arc's petition and denied the cross petitions, holding that they were untimely and that the parties had waived any right to stay arbitration by participating in the arbitration proceeding. WDF and American appeal and we now reverse.

It is well settled that a court will not direct a party to submit to arbitration in the absence of that party's "unequivocal intent to arbitrate the relevant dispute" (*Matter of Helmsley [Wien]*, 173 AD2d 280, 281 [1991]; *see also Primavera Labs. v Avon Prods.*, 297 AD2d 505 [2002]). Since there is no evidence presented herein indicating that Arc ever agreed to arbitrate, arbitration was properly stayed as to that entity.

It is also well settled that in those instances where a challenge is made to the validity of the arbitration clause itself, such as fraud in the inducement, the issue is for the court to decide (*see Utica Mut. Ins. Co. v Gulf Ins. Co.*, 306 AD2d 877, 879 [2003]; *Matter of Teleserve Sys. [MCI Telecom. Corp.]*, 230 AD2d 585, 592 [1997]; *Stoianoff v New Amer. Lib.*, 148 AD2d 600, 601 [1989]), and an agreement to arbitrate embodied in a contract is separable from the substantive provisions of the contract in which it is contained (*Matter of National Recreational Prods. [Gans]*, 46 AD2d 618, 619 [1974]; *see also Matter of Weinrott [Carp]*, 32 NY2d 190 [1973]; *Housekeeper v Lourie*, 39 AD2d 280 [1972], *appeal dismissed* 32 NY2d 832 [1973]).

In the matter before us, other than Invensys's counsel's conclusory, unsupported assertions to the contrary, there is no evidence whatsoever to support Invensys's contention that Arc agreed to arbitrate any of the issues herein. Moreover, a reading of the Settlement Agreement warrants the conclusion that the parties expected Arc would be a party to the arbitration and that Arc was, in fact, considered a necessary participant. Accordingly, we find that WDF and American were fraudulently induced to agree to the arbitration provision set forth in the Settlement Agreement by Invensys's counsel's misrepresentation that Arc had agreed to submit to arbitration.

We also find that the hearing court erred when it held that the cross petitions were untimely pursuant to CPLR 7503 (c),

since there was no agreement to arbitrate (*see Matter of Matarasso v Continental Cas. Co.*, 56 NY2d 264 [1982]; *Seneca Ins. Co. v Secure-Southwest Brokerage*, 294 AD2d 211 [2002]), as that provision was invalidated by the fraud (*see Matter of Teleserve Sys. [MCI Telecom. Corp.], supra* at 592; *Living Arts v Kazuko Hillyer Intl.*, 166 AD2d 284, 285 [1990]).

Moreover, WDF's and American's participation in the arbitration process was minimal, and once they became aware of Invensys's misrepresentations, they moved to stay the arbitration proceedings (*see Cybex Intl. v Fuqua Enters.*, 246 AD2d 316, 317 [1998]; *Matter of County of Broome [Truesdell]*, 122 AD2d 314, 315 [1986]; *cf., Matter of Eveready Ins. Co. v Royal Ins. Co.*, 215 AD2d 557 [1995], *lv denied* 86 NY2d 707 [1995]). As a result, we find that American and WDF did not waive their right to seek to stay arbitration on the ground of recently discovered fraudulent inducement and that the cross petitions should be granted. Concur—Nardelli, J.P., Mazzarelli, Andrias, Saxe and Williams, JJ.